## FISHER *v.* HAMILTON.

MALICIOUS PROSECUTION.—*Surety of the Peace.*—An action will lie for having, without probable cause and maliciously, instituted a prosecution for surety of the peace.

SAME.—*Pleading.—Copy of Proceedings.*—In an action for malicious prosecution, filing with the complaint a copy of the proceedings in the case alleged to have been prosecuted maliciously does not make such proceedings a part of the complaint.

RETURN ON WRIT FOR ARREST.—A writ for the arrest of a party, issued by a justice of the peace and returned, "served as commanded, and the defendant is present," shows the arrest of the party.

TRANSCRIPT.—*Authentication.—Justice of the Peace.*—A certificate of a justice of the peace to a transcript from his docket, that it is a true and correct transcript of the proceedings had before him in the cause, together with a true copy of all the papers in the case, given under the hand and seal of the justice, without the certificate and seal of the clerk of the county, is a sufficient authentication to entitle the transcript to be received in evidence in the several courts of this State.

EVIDENCE.—Parol evidence that a person acted as a justice of the peace is admissible to prove him to be such officer, and the authenticity of his jurat may also be proved by parol.

WITNESS.—*Impeachment.—Parties.*—Where a plaintiff who had testified as a witness was squarely contradicted by a witness for the defendant, and the plaintiff in rebutting impeached the defendant's witness, by showing that he had made statements out of court different from those testified to on the trial, after which the defendant introduced evidence to show that the character of his witness for morality, truth, and veracity, was good, it was not an abuse of the discretion of the court to then allow the plaintiff to prove his general character for morality and truth and veracity to be good.

SURETY OF THE PEACE.—*Diligence of Person Instituting Prosecution upon Information.*—Where a prosecution for surety of the peace is commenced upon information, the person instituting it should use such diligence as a reasonably prudent man would do under the circumstances to ascertain the truth of his suspicions, but he is not required to go to the person from whom he apprehends violence and inquire what are his intentions.

INSTRUCTION.—*Improper Use of the Word "Testimony."*—Where the court, in an instruction, states to the jury the law arising upon certain facts, if they should be satisfied, from a fair preponderance of the "testimony," that such facts exist, it will not be presumed that the improper use of the word "testimony" has misled the jury.

SAME.—*Statute.*—Where the court, in an action for malicious prosecution, instructed the jury that the statute limited the maximum amount of dam-

ages that could be recovered to a certain sum, stating the amount claimed in the complaint;

*Held,* that the use of the word "statute" instead of "complaint" did not injure the defendant.

DAMAGES.—*Malicious Prosecution.*—In an action for malicious prosecution, an instruction to the jury that, in assessing damages, the jury might consider every circumstance of the act of arrest and prosecution, and also every act which injuriously affected the plaintiff, not only in his person, but also in his peace of mind and individual happiness, did not authorize the jury to consider circumstances and acts not directly connected with the arrest and prosecution of the plaintiff.

From the Dearborn Circuit Court.

*S. R. Downey, D. T. Downey, J. D. Haynes,* and *J. K. Thompson,* for appellant.

*W. S. Holman, R. Gregg,* and *H. D. McMullen,* for appellee.

BUSKIRK, C. J.—The appellee by this action sought to recover from the appellant damages for having, without probable cause and maliciously, instituted a prosecution for surety of the peace.

The appellant answered in two paragraphs. The first was the general denial. In the second, he admitted having instituted the prosecution, but justified it. Denial in reply.

Trial by jury, and verdict for appellee in the sum of five hundred dollars. Motion for a new trial overruled, and judgment on the verdict.

The errors assigned are :

1. That the complaint does not contain facts sufficient to constitute a cause of action.

2. That the court erred in overruling the motion for a new trial.

The first objection urged to the complaint is, that it appears therefrom that the appellee was not prosecuted for a criminal offence, and, hence, that an action for malicious prosecution can not be maintained. The point made is, that the proceeding for surety of the peace is a civil and not a criminal proceeding, and that an action for malicious prosecution can only be maintained by a person who has been prosecuted upon a

criminal charge; and in support of this position reference is made to *M'Neely* v. *Driskill,* 2 Blackf. 259, and *Turpin* v. *Remy,* 3 Blackf. 210.

The above cases seem to support the position assumed, but the doctrine there announced was held to be unsound in *Stancliff* v. *Palmeter,* 18 Ind. 321, where it was held, that three remedies were given for personal injuries inflicted through the instrumentality of alleged prosecutions :

1. Actions of trespass and case for false imprisonment.

2. Actions for malicious arrests, in civil cases.

3. Actions proper, for malicious prosecutions, upon a criminal charge.

A prosecution, under the statute, for surety of the peace is a criminal proceeding to prevent the commission of a crime, but is not a prosecution for a crime. *The State* v. *Abrams,* 4 Blackf. 440; *The State, ex rel. Greene,* v. *Maners,* 16 Ind. 175; *Murray* v. *The State,* 26 Ind. 141; *The State* v. *Vankirk,* 27 Ind. 121 ; *Deloohery* v. *The State,* 27 Ind. 521.

It is objected, in the second place, that it does not appear from the complaint that the appellee was arrested. It is expressly averred therein that he was arrested and taken before the justice of the peace. A copy of the proceedings before the justice was filed with the complaint, and it is claimed that the return of the officer upon the writ does not show an arrest. The filing of a copy of such proceedings did not make it a part of the complaint. *Lytle* v. *Lytle,* 37 Ind. 281. But if such proceedings constituted a part of the complaint, we think the return showed an arrest. The command of the writ was to arrest the appellee and take him forthwith before the justice. The return was : " 17th October, 1871 ; served as commanded, and the defendant is present."

The writ could not have been served as commanded, unless the appellee had been arrested.

We think the objections urged to the complaint are untenable, and that the complaint is good.

We next inquire whether the court erred in overruling the motion for a new trial.

The prosecution for surety of the peace was had before Esquire Hemphill, in Ohio county, where the appellee was discharged. The present action originated in that county, and the venue was changed to Dearborn county, where the trial was had. Upon the trial, the appellee offered in evidence a transcript of the proceedings had before Esquire Hemphill, when the appellant objected to its introduction, for the reasons that the transcript is not authenticated as required by law, and the signature and official character of the said assumed justice of the peace are not proved; but the objection was overruled, and the transcript admitted, and appellant entered an exception.

First, was the transcript properly certified? The certificate was as follows:

" State of Indiana, county of Ohio, ss: I, James Hemphill, a justice of the peace in and for Ohio county, do hereby certify that the above is a true and correct transcript of the proceedings had before me in the above entitled cause, together with a true copy of all the papers in the case.

" Given under my hand and seal, this 17th day of February, 1872. JAMES HEMPHILL, [Seal.]

" Justice of the Peace."

To which ware added these words, under the certificate:

" Complaint on file, if wanted. J. H., J. P."

The certificate is in the language of section 280, 2 G. & H. 182, except the word " correct " is used instead of the word " complete," but we think the words " together with a true copy of all the papers in the case," and that the proceedings which are set out are all that could have taken place in such cause, supply the omission of the word " complete." *Wiley* v. *Forsee,* 6 Blackf. 246; *Ward* v. *Hazlerigg,* 7 Blackf. 46; *Brown* v. *McKay,* 16 Ind. 484.

Was the transcript properly authenticated? It is argued that it should have been authenticated by the certificate and seal of the clerk of Ohio county. We do not think so. It is

provided, by section 280 of the code, that " copies of the proceedings and judgments of any justice of the peace of this State, certified under his hand and seal, or under the hand and seal of the justice who may have the legal custody thereof, as true and complete copies of such proceedings or judgments, shall be received as evidence in the several courts in this State." See sec. 539, 2 G. & H. 267.

Section 279 of the code, 2 G. & H. 181, relates to the authentication of the copies of proceedings and judgments of justices of the peace in other states or in any territory of the United States.

Section 283, 2 G. & H. 183, does not relate to the proceedings and judgments of justices of the peace.

We think the certificate was properly authenticated.

It is next claimed that the court improperly admitted in evidence, over objection of appellants, two papers, purporting to be the original affidavit and warrant in the prosecution for surety of the peace. The objections were, first, that the signatures thereto are not proven; second, because no proof has been made that said supposed officer was then a justice of the peace of Ohio county, Indiana, and then so acting. Pending this objection, the appellee called appellant to the stand, and proved his execution of the paper and the authenticity of the *jurat*, and that Esquire Hemphill was, at the time, an acting justice of the peace.

It is claimed that the court erred in admitting parol testimony, and we are referred to *Hagaman* v. *Stafford*, 2 Blackf. 351, as an authority for such position. It was expressly held in such case, that such proof might be made by parol testimony.

The ruling in the above case has been adhered to in the following cases: *Doughton* v. *Tillay*, 4 Blackf. 433 ; *Johnson* v. *Prather*, 6 Blackf. 411 ; *Fellows* v. *Miller*, 8 Blackf. 231 ; *Draper* v. *Williams*, 8 Blackf. 574.

The case of *Brown* v. *Connelly*, 5 Blackf. 390, is squarely in point. There it was held, that parol evidence that a person had acted as a justice of the peace was admissible to prove

him to be such officer. We think the original affidavit and warrant were properly proved and admitted in evidence.

It is next contended that the court erred in permitting the appellee to introduce evidence to prove that his character for morality and truth and veracity was good. The plaintiff introduced his evidence in chief and rested. The defendant then introduced his evidence and rested. The plaintiff then offered his rebutting evidence. The testimony of the plaintiff was squarely contradicted by the testimony of a witness offered by the defendant. The plaintiff, in his rebutting evidence, impeached such witness, by proving that he had made statements out of court different from those testified to on the trial. After the close of the rebutting evidence, the defendant introduced several witnesses and proved the general character of such witness for morality and truth and veracity to be good. The plaintiff then offered several witnesses by whom he proposed to prove that his general character for morality and truth and veracity was good, to which the appellant objected, on the grounds that the plaintiff, being a party, cannot so sustain his character as a witness, and that it was too late to introduce such evidence for that or any other purpose in the case; but the objections were overruled, and the evidence admitted.

The first objection to the competency of such evidence is wholly untenable. Since parties have been rendered competent as witnesses, they occupy a twofold relation to the case, that of parties and witnesses. As witnesses, they are governed by the same rules and regulations as other witnesses. They may, like other witnesses, be impeached and sustained, to the same extent and in the same manner as other witnesses. *Harris* v. *The State*, 30 Ind. 131; *Seeger* v. *Pfeifer*, 35 Ind. 13.

We think it was within the discretion of the court to permit the appellee to make such proof at the time it was made, and that there was no such abuse of discretion as would justify us in reversing the case.

The giving of the second, fourth, twelfth, and thirteenth instructions is claimed to be erroneous.

The second instruction is quite lengthy, and contains defi-

nitions of malice and probable cause. This portion is not objected to. The court then says: "In determining the question of probable cause, the jury should inquire in their own minds, in the light of the testimony adduced, what inquiry did the defendant make to ascertain the truth or falsity of the apprehended injury to himself complained of? Did he make inquiry of plaintiff or any one else? Did he use due diligence, before instituting the surety of the peace prosecution, in making such inquiry? These questions must be determined by you from the testimony, and if you find therefrom that he did not, and that he instituted said prosecution maliciously, and without probable cause ascertained to exist, after due inquiry as aforesaid, you should find for the plaintiff, unless such facts constituting such probable cause were known to the defendant of his own knowledge; and in that event inquiry was not necessary."

The objection urged to the instruction is, that the jury were charged that it was the duty of the appellant to inquire of the appellee, before he instituted the prosecution for surety of the peace, whether he had threatened him and attempted to shoot him. We think the jury must have so understood the charge of the court.

The court propounded to the jury the following question: "Did he make inquiry of the plaintiff or any one else?" In a subsequent part of the charge, the court said: "And that he instituted said prosecution maliciously, and without probable cause ascertained to exist, after due inquiry as aforesaid." The due inquiry spoken of necessarily included inquiry of the plaintiff.

The law is quite well settled, that where a prosecution is commenced upon information, the person instituting it should use due and reasonable diligence to ascertain the truth of the charge preferred; and there are cases where the law would require the person preferring the charge to make inquiry of the accused party. Such was the rule laid down in *Lacy* v. *Mitchell*, 23 Ind. 67, which was a prosecution for larceny of corn. But we do not think that such a rule should be applied in a case like the present.

The appellant and appellee had, some years previous to the commencement of the prosecution for surety of the peace, quarrelled about a road, and had not been good friends. The appellant was the president of a turnpike company that was engaged in the construction of a road over the land of appellee, who was greatly opposed to the construction of such road. The appellee had been awarded three hundred dollars damages for the appropriation of his land. The appellant delivered said sum of money to Mr. Davis, who had agreed to make a tender of it to the appellee. For that purpose, Davis went to the house of appellee. While Davis was upon the premises, the appellant and another gentleman passed the highway near the house of the appellee. Davis afterward informed the appellant that he came very near being shot; that while he was passing near the residence of appellee, he had a gun pointed at appellant, and that he was prevented from shooting by his daughter.

There was also evidence tending to prove that the appellee had said that if he could not prevent the construction of such turnpike through his farm by fair means, he would by foul means.

The prosecution for surety of the peace was based upon the grounds that appellant feared that appellee would injure him by violence, and would injure his property. While it was the duty of the appellant, by reasonable inquiry, to satisfy himself that he was in danger of being injured by violence, or of having his property injured, we think he was not required to expose himself to danger by inquiring of the man whom he feared whether he had attempted to shoot him, and whether he intended to injure him by violence, or injure his property. Such a requirement would be unreasonable and dangerous. The appellant was not thus required to hazard his person, life, or property. This would render nugatory a prosecution for surety of the peace, which is designed to prevent, and not to incite, violence.

Exception is taken to the following portion of the fourth charge :

" The jury may infer malice when they are satisfied, from a

fair preponderance of the testimony, that there was a want of probable cause for the prosecution of the plaintiff, but they are not bound to do so."

The principal objection urged to the above instruction is, that the court used the word "testimony" instead of "evidence," but we do not think the jury were misled by the improper use of the word " testimony."

The twelfth instruction related to the measure of damages, and was as follows:

" If the jury find, from a fair preponderance of the evidence in the case, that the defendant instituted the prosecution for surety of the peace before Esquire Hemphill against plaintiff, as charged in the complaint, maliciously and without probable cause, you should find for the plaintiff in any sum you may agree upon, not exceeding five thousand dollars. The statute provides that the damages recovered in such cases shall not exceed that sum, though it may be as low as one cent."

Objection is made to the last sentence in the instruction. There is no statute limiting the amount of recovery in such a case. The amount of damages claimed in the complaint was five thousand dollars. The recovery could not exceed the amount claimed. As the jury were limited to five thousand dollars, we cannot see how the appellant was injured by the use of the word "statute" instead of "complaint."

The thirteenth instruction is as follows:

" In the event you find for the plaintiff, in fixing the amount of the damages, you may take into consideration every circumstance of the acts of his arrest and prosecution, and also every act which injuriously affected the plaintiff not only in his person, but his peace of mind and individual happiness."

It is claimed that, under the above instruction, the jury were authorized and, in fact, did take into consideration the injury which the plaintiff had sustained by the construction of the gravel road through his farm. We do not think it was subject to any such construction. The circumstances and acts which were to be taken into consideration were limited to the arrest and prosecution of the appellee. We think the charge was correct.

The material and controlling question in the case was, whether the appellant had probable cause for instituting the prosecution for surety of the peace. It is very obvious that the second instruction injuriously affected the appellant; for by that the jury were told that in determining the question of whether there was probable cause, they should consider whether the appellant had ascertained by inquiry of plaintiff whether he had threatened to injure him or his property, and whether he had attempted to shoot him and was prevented from so doing by the interference of the daughter of the appellee. As we have seen, the appellant was only required to use such diligence as a reasonably prudent man would use under such circumstances, to ascertain the truth of his suspicions, and that it would be an act of foolhardiness, which means courage without sense or judgment, and mad rashness, for a person who apprehended personal violence from another to go to such person and inquire what his intentions were. If he should go unarmed, he would place himself at the mercy of his enemy, and if he went armed, the chances would be that he would precipitate a difficulty, instead of avoiding one, as was the manifest purpose of the statute. For this error the judgment must be reversed.

The judgment is reversed, with costs; and the cause is remanded for a new trial in accordance with this opinion.