J. D. MENTZER v. THE WESTERN UNION TELEGRAPH COMPANY, Appellant.

**Damages:** MENTAL SUFFERING. A telegram announces the time of holding the funeral of addressee's mother. The sender knew the relationship and that delay would prevent attendance. Negligent delay in its delivery did prevent attendance. *Held*, recovery may be had by addressee for mental anguish caused, though no physical injury was sustained. The recovery may be *ex contractu* or *ex delicto*. It is not intended to apply this rule to ordinary cases of contract, or to torts in which mental anguish is incidental or not proximate. *Paine v. Railway*, 45 Iowa, 569; *Fitzgerald v. Railway*, 50 Iowa, 79; *Stone v. Railway*, 47 Iowa, 88, and *Hall v. City*, 90 Iowa, 585, *distinguished*.

KINNE, J., dissents.

**Mental Anguish: Evidence.** Testimony of plaintiff that he was desirous of attending his mother's funeral, felt "hard" over the delay of a message announcing its time, that he wired after getting the announcement to see if it was yet possible to attend, and evidence that on inquiries for a message he showed anxiety and that he was excited when he received the message, sustains a finding that there was mental suffering.

*Appeal from Linn District Court.*—HON. J. H. PRESTON, Judge.

SATURDAY, FEBRUARY 9, 1895.

This is an action at law to recover damages from defendant for negligently failing to deliver a telegram notifying plaintiff of the death of his mother, in the state of Ohio, whereby he was prevented from attending her funeral. There was a trial to a jury, verdict and judgment for plaintiff for the sum of one hundred dollars, and defendant appeals.—*Affirmed.*

*Mills & Keeler* for appellant.

*Heins & Heins* for appellee.

Deemer, J.—There was testimony tending to show, and the jury may well have found that on the eleventh day of April, 1892, one H. Dorn delivered to the defendant, at Creston, Ohio, to be transmitted to plaintiff, at Cedar Rapids, Iowa, the following telegraphic message: "Creston, Ohio, 11, 1892. To J. D. Mentzer, Cedar Rapids, Iowa. Mother dead. Funeral Wednesday. Answer if coming or not. H. Dorn." That Dorn paid the regular charges for transmitting the same, and, at the time of the delivery of the message, informed defendant's employe in charge of the office at Creston that it was plaintiff's mother who was dead. That the message reached defendant's office at Cedar Rapids at 9:16 A. M., April 11, 1892, but through the negligence and carelessness of defendant's employes, was not delivered until 9 P. M., April thirteenth. The plaintiff inquired at defendant's office at Cedar Rapids at about seven o'clock in the evening of April eleventh, and was informed there was nothing there for him. It is shown beyond dispute that plaintiff's mother died at Creston, Ohio, on April 11, 1892, and was buried on the thirteenth, and that, by reason of the failure of defendant to deliver the message informing plaintiff of her death, he was prevented from attending her funeral. There was also testimony tending to show that plaintiff lost some time from his work, in trying to discover whether a message had been sent him or not. The court gave the jury the following instruction with reference to the measure of damages, in the event they found plaintiff entitled to recover: "(7) If you find for plaintiff, then you will allow him for the

amounts he paid for messages sent by him, if any; for loss of time caused by the failure to deliver said message, and rendered useless thereby, if any; and, in addition thereto, such an amount as you may find from the evidence to be just and reasonable to compensate plaintiff for the damages sustained by reason of mental anguish suffered by him by reason of failure to deliver said message, if any. But you should not allow plaintiff anything for loss of time or expense in going to Creston, Ohio, nor should you allow plaintiff for the money paid by Dorn for the message in question."

It is first insisted by appellant's counsel that the plaintiff cannot recover because he made no contract with the defendant, and is not in privity with it; that the action is founded on contract, and therefore he cannot maintain the suit. Such, no doubt, is the rule in England. But the courts of this country almost universally hold to the contrary. In the recent case of *Herron v. Telegraph Co.*, 90 Iowa, 129, 57 N. W. Rep. 696, we had occasion to consider this question; and the holding there, which is in accord with the current of judicial opinion in this country, was that the person to whom the message was addressed might maintain an action for the damages sustained by him.

II. It is conceded by appellant's counsel that plaintiff suffered damages under the first two heads covered by the instruction, to the amount of one dollar, and no complaint is made of the charge, so far as it relates to these two items. The objection to the instruction is that it allows the jury to assess damages for "mental anguish," and it is contended that such damages are not allowable in actions of this kind. Counsel also insists that, if such damages are recoverable in any case, they should not be allowed here, for

the reason that the testimony negatives any such suffering on the part of plaintiff as would entitle him to recover. Disposing of this last proposition first, we have to say that there is sufficient testimony in the record to justify the conclusion that the plaintiff did suffer as claimed. The evidence discloses such conduct on the part of plaintiff in inquiring for a message at the office of the defendant company, and in the efforts put forth by him to ascertain if a death message had come, as to evince mental anxiety. Plaintiff says he was desirous of attending his mother's funeral, and that he felt "hard" because of the delay in the delivery of the message. He immediately telegraphed to ascertain if he could be present at the funeral, and took up his journey to Ohio, to be in attendance upon the burial. When he called at defendant's office, after the receipt of the message, he was excited and anxious. He complained of the delay, and wanted to know why the message was not delivered at his house. We think these declarations, and this course of conduct, clearly indicate that plaintiff did suffer as charged. We have, then, the question as to whether damages for mental suffering can be recovered in actions of this kind, independent of any physical injury, where the company is advised of the character of the message, and negligently fails to deliver it. This question has been variously decided by the different courts of the country, but, up to this time, is an open one in this state. The following cases answer the proposition in the affirmative: So *Relle v. Telegraph Co.*, 55 Tex. 308; *Stuart v. Telegraph Co.*, 66 Tex. 580, 18 S. W. Rep. 351; *Railway Co. v. Wilson*, 69 Tex. 739, 7 S. W. Rep. 653; *Telegraph Co. v. Broesche*, 72 Tex. 654, 10 S. W. Rep. 734; *Telegraph Co. v. Simpson*, 73 Tex. 423, 11 S. W. Rep. 387; *Telegraph Co. v. Adams*, 75 Tex. 531, 12 S. W. Rep. 857; *Womack v. Telegraph Co.*

(Tex. Civ. App.) 22 S. W. Rep. 417; *Telegraph Co. v. Carter* (Tex. Civ. App.) 21 S. W. Rep. 688; *Wadsworth v. Telegraph Co.*, 86 Tenn. 695, 8 S. W. Rep. 574; *Railroad Co. v. Griffin* (Tenn.) 22 S. W. Rep. 737; *Reese v. Telegraph Co.*, 123 Ind. 294, 24 N. E. Rep. 163; *Telegraph Co. v. Stratemeier* (Ind. App.) 32 N. E. Rep. 871; *Telegraph Co. v. Newhouse* (Ind. App.) 33 N. E. Rep. 800; *Telegraph Co. v. Henderson*, 89 Ala. 510, 7 So. Rep. 419; *Thompson v. Telegraph Co.*, 106 N. C. 549, 11 S. E. Rep. 269; *Young v. Telegraph Co.*, 107 N. C. 370, 11 S. E. Rep. 1044; *Thompson v. Telegraph Co.*, 107 N. C. 449, 12 S. E. Rep. 427; *Chapman v. Telegraph Co.*, (Ky.) 13 S. W. Rep. 880; *Telegraph Co. v. Stephens* (Tex. Civ. App.) 21 S. W. Rep. 148; *Logan v. Telegraph Co.*, 84 Ill. 468. And perhaps others. While perhaps equally as large a number answer it in the negative. See the following: *Telegraph Co. v. Wood*, 6 C. C. A. 432; *Russell v. Telegraph Co.* (Dak.) 19 N. W. Rep. 409; *West v. Telegraph Co.* (Kan.) 17 Pac. Rep. 811; *Telegraph Co. v. Rogers* (Miss.) 9 South. 823; *Chapman v. Telegraph Co.*, 88 Ga. 763, 15 S. E. Rep. 901; *Connell v. Telegraph Co.* (Mo. Sup.) 22 S. W. Rep. 345; *Telegraph Co. v. Saunders* (Fla.) 14 South. Rep. 148; *Summerfield v. Telegraph Co.*, (Wis.) 57 N. W. Rep. 973; *Francis v. Telegraph Co.* (Minn.) 59 N. W. Rep. 1078. Perhaps other cases announcing the same rule may be found. Of the text writers: Shearman & R. Neg. p. 692, section 605; Thompson Electr. section 379; 3 Sutherland Dam. sections 975-980, inclusive; 2 Sedgwick Dam. section 894, and others, hold that such damages may be recovered, while Wood's Mayne, Dam. p. 74; Cooley, Torts, 271,—and others, seem to deny it. The general rule which has come down to us from England, no doubt, is that mental anguish and suffering resulting from mere negligence, unaccompanied with injuries to the person, cannot be made the basis of an action for damages. See *Lynch v. Knight,*

2 H. L. Cas. 577; *Hobbs v. Railroad Co.*, L. R. 10 Q. B.
122.   And doubtless this is the rule of law to-day in all
ordinary actions, either *ex contractu* or *ex delicto*.   But
it must be remembered that there are exceptions to the
rule, and that the telegraph, as a means of conveying
intelligence, is comparatively a new invention.   The
general rule above referred to was adopted long before
the electric current was harnessed and made subserv-
ient to the will of man.   One of the crowning glories
of the common law has been its elasticity, and its adapt-
ability to new conditions and new states of fact.   It
has grown with civilization, and kept pace with the
march of events, so that it is as virile to-day, in our
advanced state of civilization, as it was when the race
was emerging from the dark ages of the past.   Should
it ever fail to be adjustable to the new conditions which
age and experience bring, then its usefulness is over,
and a new social compact must be entered into.

Let us look at this query, then, upon principle and
see if such damages are recoverable.   And first we
must determine the nature, objects, and purposes of
telegraph companies; their legal status and duties to
the public, and to those with whom they do business;
then the nature of the action; and, finally, the elements
of damage which may be recovered, either by reason of
their breach of contract or because of their failure to
perform their duties,—and see if there is any reason
known to and recognized by the law, why such damage
should not be allowed.   Far be it from our purpose to
make law.   We cannot legislate, but will discover, if
we can, whether there are any precedents for recovery
lying in the ashes of the past.

What, then, is the nature, purpose, and object of the
telegraph, and what is its legal status?   It is a system
of appliances conducting the electric current or fluid,
used for the purpose of transmitting intelligence,

thought, or news from one place to another. Somewhat akin is it to a common carrier, in this: that they are both carriers, and must serve all alike; but the carrier transports persons or goods, while the telegraph conveys intelligence. The very object of the invention is to quickly convey information from one to another, upon which that other may act. It is a public use, and for that reason eminent domain may be exercised in its behalf, and is engaged in a business affecting public interests to such an extent that the state may regulate the charges of companies engaged in the business. It is not an insurer of the accuracy or of the delivery of messages intrusted to it, but it is so far a common carrier as to be bound to serve all people alike, and to exercise due care in the discharge of its public duties. Nor can it provide by contract for exemption from liability from the consequences of its own negligence. Enough has been stated to show that it owes a duty to all whom it attempts to serve, independent of the contractual one entered into when it receives its messages. Telegraph companies are held, then, to the exercise of due care, and for negligence, either in sending or delivering messages, are liable to any person injured thereby for all the damages he may sustain. We have stated these rules in order to show that one who is injured by their neglect of duty may maintain an action, either *ex contractu* or *ex delicto*, for the injuries sustained. The rule, no doubt, is as announced by Judge Cooley in his work on Torts, at page 104 *et seq.:* "In many cases an action, as for tort, or an action for a breach of contract, may be brought by the same party on the same state of facts. This, at first, may seem in contradiction to the definition of a tort as a wrong unconnected with contract, but the principles which sustain such actions will enable us to solve the seeming difficulty.     *     *     *
There are also, in certain relations, duties imposed by

law, a failure to perform which is regarded as a tort, though the relations themselves may be formed by contract covering the same ground.   *   *   *   Thus, for breach of the general duty imposed by law because of the relation, one form of action may be brought, and for the breach of contract another form of action may be brought." See, also, *Rich v. Railroad Co.*, 87 N. Y. 382; *Nevin v. Pullman Car Co.*, 106 Ill. 222; *Railway Co. v. Kemp*, 61 Md. 619; Cooley, Torts, p. 3. In this state all forms of action are abolished. The pleader simply makes a plain statement of the facts, avoiding legal conclusions, and may recover as damages, on the facts stated, whatever the law will allow, either for breach of the contract or for the tort pleaded. We desire to make this plain, for if, in the further progress of the opinion, it should appear that damages for mental suffering are allowed in cases of this kind, either for breach of contract or for tort, then plaintiff may recover. With this thought in mind, the reader may also be able to explain and reconcile some of the cases before cited.

Having determined the nature and objects, the *status* and relation, of the defendant company, we turn to the verdict of the jury in this case, and find that not only did the defendant break its contract, but that it was guilty of negligence as well, and that under all known rules of law, plaintiff is entitled to some damages. Defendant insists they are simply nominal, and plaintiff contends he has suffered acute and actual damages, for which he should be compensated. The general rule of damages for breach of contract comes down to us from the opinion of *Hadley v. Baxendale*, 9 Exchq. 341, and is as follows: "When two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such

breach of contract should be such as may fully and reasonably be considered either as arising naturally— *i. e.* according to the usual course of things—from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it." In actions for tort the rule is much broader. The universal and cardinal principle in such cases is that the person injured shall receive compensation commensurate with his loss or injury, and no more. This includes damages not only for such injurious consequences as proceed immediately from the cause which is the basis of the action, but consequental damages as well. These damages are not limited or affected, so far as they are compensatory, by what was in fact contemplated by the party in fault. He who is responsible for a negligent act must answer "for all the injurious results which flow therefrom, by ordinary, natural sequence, without the interposition of any other negligent act or overpowering force." Whether the injurious consequences may have been "reasonably expected" to follow from the commission of the act is not at all determinative of the liability of the person who committed the act to respond to the person suffering therefrom. As said in *Stevens v. Dudley*, 56 Vt. 158, "it is the unexpected, rather than the expected, that happens in the great majority of cases of negligence." Under all the authorities, it was the duty of the defendant to transmit, and deliver messages intrusted to it without unreasonable delay; and, in failing to do so, it becomes liable for all damages resulting therefrom. Cooley, Torts, 646, 647; Gray, Commun. Tel. sections 81, 82, *et seq.;* Wharton Neg. section 767. That a person is entitled to at least nominal damages for an infraction of the duty imposed upon a telegraph company is conceded. And it must also be conceded

that every person desires to attend upon the obsequies of his near relations. And when, able and anxious to attend, he is, through the negligence of a telegraph company, not notified of their death in time to attend the funeral, he naturally and almost inevitably suffers mental pain and anguish. No man is so depraved but that he yet remembers his mother, and, when able, will pay her the last respect that is her due. In the case at bar it is established that defendant knew the nature of the intelligence it was to transmit, and also knew that, if it was not delivered within a reasonable time, plaintiff was likely to be greatly pained on account not only of not knowing of the death of his mother until she was placed under the ground, but also because of his inability to attend the funeral on account of the delay. That the defendant should reasonably have contemplated such results, under the rule laid down in *Hadley v. Baxendale*, is clear.

But it is insisted that damages for mental suffering, although contemplated by the parties, cannot be recovered for mere breach of contract. That such is the general rule announced by the courts, and that it is the rule with reference to all ordinary contracts, must be conceded. But it must be remembered that this rule grew up at a time when there was no thought of the transmission of intelligence by electricity. Breaches of contract, such as the one in question, were unknown to the common law. The business of telegraphy has grown up within comparatively recent years. But must we say that the law furnishes no remedy because no case of the kind was known to the common law? If so, such law is no longer applicable to our present conditions. Regard must be had, too, to the subject-matter of the contract. The message does not relate to property. In such cases, for breach of contract, the law affords adequate compensation. But it does

relate to the feelings, the sensibilities, aye, sometimes even to the life, of the individual. It does not affect his pocketbook seriously, but it does relate to his feelings, his emotions, his sensibilities,—those finer qualities which go to make the man. Shall we say that in one case the law affords compensation, and in the other it does not? Instead of goods which are conveyed by the defendant, it is intelligence,—thought. If defendant were a common carrier of goods, it would be liable for all damages sustained by reason of its breach of contract to deliver them within a reasonable time. But it is said no damages can be recovered for failure to deliver intelligence, beyond the amount actually paid for the message, or nominal damages, although the addressee may endure the greatest of mental pangs, notwithstanding the fact that such suffering was in the contemplation of the parties at the time the contract was made. Of course, every breach of contract is likely to cause some pain, but most of these contracts relate to property and pecuniary matters, and in such case the law furnishes what has always been held to be an adequate remedy for the pecuniary loss sustained. Mental suffering has never been considered as within the contemplation of the parties at the time the contract is entered into, and recovery cannot be had therefor. But few contracts have direct relation to the feelings and sensibilities of the parties entering into them, and the pain growing out of the ordinary breach of contracts relating to property is entirely different from that suffered from a death message. Sutherland, Dam. section 980. We find a well recognized exception to the general rule that damages cannot be had for mental anguish in cases of breach of contract, in the action for breach of promise of marriage, and the reason for this exception is quite applicable here. In such cases the defendant, in making his contract, is dealing with the feelings and emo-

tions. The contract relates almost wholly to the affec
tions, and one is not allowed to so trifle with another's
feelings. He knows at the time he makes the contract
that if he breaks it the other will suffer great mental
pain, and the courts, without exception, have allowed
recovery in such a case. See *Holloway v. Griffith,* 32
Iowa, 409; *Royal v. Smith,* 40 Iowa, 615. The distinc-
tion we have pointed out is well stated in 1 Sutherland
Dam. section 92. Other exceptions have sometimes
been made, which we need not further refer to. As said
in the case of *Wadsworth v. Telegraph Co., supra:*
"These illustrations serve the purpose of showing that
in the ordinary contract only pecuniary benefits are
contemplated by the contracting parties, and that,
therefore, the damages resulting from such breach of
contract must be measured by pecuniary standards,
and that, where other than the pecuniary benefits are
contracted for, other than pecuniary standards should
be applied in the ascertainment of damages flowing
from the breach." "The case before us, so far as it is
an action for breach of contract, is subject to the same
general rule; and the defendant is answerable in dam-
ages for the breach, according to the nature of the con-
tract, and the character and extent of the injury suf-
fered by reason of its nonperformance. The message
was sent for a particular purpose, of which the defend-
ant had knowledge. That purpose was not of a pecun-
iary nature. There was no offer or instruction to buy
or sell anything,—no proposition or promise with
respect to any business transaction. The message was
of far greater importance to the receiver than any of
these. It was information which defendant undertook
to convey for a stipulated sum, and which, if promptly
conveyed, would have enabled plaintiff to have been
with him at the last moments, and would have saved
her the injury of which she complains. * * * The

messages were in proper language, and lawful in purpose. She was entitled to the information they contained, and to whatever benefits that information would have conferred upon her, even though such benefits be mainly or altogether to the feelings and affections. The defendant contracted that she should have those benefits, and that she should be spared whatever pain and anguish such information, properly conveyed, would prevent."

Reverting now to the damages which may be allowed if the action is treated as *ex delicto*, and to the broader rule of damages in cases of tort, we find that, in very many of these actions, damages are recoverable for mental anguish, some of which we will refer to hereafter. It is conceded by appellant's counsel that such damages may in certain cases be recovered, but they insist that they are never recoverable unless accompanied by some physical injury. It seems to us that, when it is conceded that mental suffering may be compensated for in actions of tort, the right of plaintiff to recover in this case is established. Let us look to some of the cases authorizing recovery in such cases, and see if there are no analogies. Damages for injuries to the feelings are given, though there are no physical injuries, where a person is wrongfully ejected from a train. *Shepard v. Railway Co.*, 77 Iowa, 54, 41 N. W. Rep. 564. In actions for slander and libel. *Terwilliger v. Wands*, 17 N. Y. 54. For malicious prosecution. *Fisher v. Hamilton*, 49 Ind. 341. For false imprisonment. *Stewart v. Maddox*, 63 Ind. 51. For *crim. con.* and seduction, and for assault. So damages for injured feelings were allowed where a conductor kissed a female passenger against her will. *Craker v. Railway Co.*, 36 Wis. 657. So, likewise, it has been held that the removal of the body of a child from the lot in which it was rightfully buried, to a charter plot, gives the parent

a right to recover for injury to his feelings. *Meagher v. Driscoll,* 99 Mass. 281. And a widow may recover for such suffering and nervous shock, against the person who unlawfully mutilates the dead body of her husband, although no actual pecuniary damages are alleged or proven. *Larson v. Chase,* 47 Minn. 307, 50 N. W. Rep. 238. See, also, Sutherland, Dam. section 979, and authorities cited for kindred cases. The wrongs complained of in these cases all directly affected the feelings, and injury thereto, proximately, resulted. But not more so than in the case at bar, where the injury to the feelings is apparent, and suffering necessarily followed. This rule of necessity applies where the feelings are directly affected by the nature of the wrong complained of. It has no application to such mental suffering as indirectly results from the commission of every tort.

Let us now look to our own cases for a moment, and see what has been held. In the case of *Stevenson v. Belknap,* 6 Iowa, 103, which was an action brought by a father for the seduction of his daughter, this court approved an instruction that damage may be given, not only for his loss of service and actual expenses, but also on account of the wounded feelings of the plaintiff, and of his anxiety, as a parent of other children, whose morals may be corrupted by the example. In the case of *McKinley v. Railroad Co.,* 44 Iowa, 318, which was an action for an assault by one of defendant's employes upon the plaintiff, the lower court instructed the jury that plaintiff might recover, as compensatory damages, not only for bodily pain and suffering, but for the outrage and indignity put upon him. This instruction was approved, and it was held that mental suffering not arising from bodily pain, but from the nature of the assault, might be recovered, the court using this language: "The question is fairly presented whether mental anguish, arising from the nature and character

of the assault, constitutes an element of compensatory, damages.    *    *    *    We, on principle, are unable to see why mental pain arising from or caused by the nature of the assault whereby the wound was inflicted *    *    *    should not be an element of such damages." "A careful examination of the authorities will disclose the fact that the weight of adjudicated cases is in favor of the proposition that mental anguish arising from the nature and character of the assault is an element of compensatory damages.    *    *    *    The mind is no less a part of the person than the body, and the sufferings of the former are sometimes more acute and lasting than those of the latter." It may also be said in this connection that the court in this case declined to follow the case of *Johnson v. Wells, Fargo & Co.*, 6 Nev. 224, and kindred cases which are relied upon by appellant's counsel, remarking that "the decided weight of authority is opposed to the view taken in that case, and we are unwilling to follow it, and by so doing ignore the other authorities cited." That the question was well considered and deliberately decided is apparent from the fact that Mr. Justice Day dissented from the conclusion of the majority. In the quite recent case of *Shepard v. Railway Co.*, 77 Iowa, 58, 41 N. W. Rep. 564, we went still further, and squarely held that damages for mental suffering are recoverable, although there was no physical pain or injury. In that case we said: "If these things [wounded feelings] may be considered in connection with physical suffering, in estimating actual damages, we know no reason which forbids their being considered in the absence of physical suffering. It is said that the 'mental pain' contemplated by the court in the case last cited [44 Iowa, 315,] includes something more than mere wounded feelings or wounded pride, and that the latter can be considered only where malice is

·alleged and proven, and where there has been proof of actual bodily injury. We do not think the claim is ·well founded. Humiliation, wounded pride, and the like may cause very acute mental anguish. The suffering caused would undoubtedly be different in different persons, and no exact rule for measuring it can be ·given. In ascertaining it, much must necessarily be left to the discretion of the jury, as enlightened by the charge of the court. The charge given in this case, as a whole, confined the jury to an allowance for compensatory damages." In the case of *Curtis v. Railway Co.*, 87 Iowa, 622, 54 N. W. Rep. 339, this court squarely held that damages might be recovered for mental pain and suffering, although the damages for physical injury were merely nominal; and further held that such damages were compensatory, and not punitive. In the case of *Parkhurst v. Masteller*, 57 Iowa, 480, 10 N. W. Rep. 864, which was an action for malicious prosecution, this court followed the *McKinley Case*, and held that in such actions actual damages would include compensation for bodily and mental suffering, and clearly held that damages for mental suffering might be recovered in such cases although entirely disconnected from bodily suffering or disability. In a case of assault and battery (*Lucas v. Flinn*, 35 Iowa, 9), this court held that damages for mental anguish might be allowed as compensation. In the case of *Paine v. Railroad Co.*, 45 Iowa, 569, the rule in the *McKinley Case* was recognized; but it was held there was no right of recovery for injury to feelings, on account of the peculiar facts of that case. And the case of *Fitzgerald v. Ry. Co.*, 50 Iowa, 79, merely follows the *Paine Case*, and holds that, under the facts, plaintiff was not entitled to recover. The rule of the *McKinley Case* has never, to our knowledge, been doubted by any later decision. In the case of

*Stone v. Railroad Co.*, 47 Iowa, 88, it was held that the
action in that case, owing to its peculiar facts, was an
action for breach of contract; and that damages for
mental suffering were not recoverable, and in this case
it is said: "Insult and abuse accompanying a breach
of contract cannot affect the amount of recovery in
such actions. If the action is based upon a wrong, the
jury are permitted to consider injury to feelings, and
many other matters which have no place in actions to
recover damages for breach of contracts;" citing *Walsh
v. Railway Co.*, 42 Wis. 23. It is enough to say here
that the action at bar is *ex delicto*, or that damages
may be recovered as if it were, under our system of
Code pleading. The only other case having any bear-
ing upon this question is *Hall v. Incorporated Town
of Manson*, 90 Iowa, 585, 58 N. W. Rep. 881, which was
a case wherein plaintiff sought to recover damages for
personal injuries sustained by reason of a defective
street crossing. The lower court instructed the jury
that plaintiff might recover "for the peril, if any, the
jury may find she was subjected to, from the evidence
in the case." This court disapproved the instruction,
not because damages for mental anguish could be recov-
ered, but because, "in our view of the instruction, its
wording would warrant the jury in allowing damages
for mental pain and suffering, which would include
peril, and also for peril, as a distinct, independent, and
additional element of damage, thereby allowing double
compensation for the peril plaintiff was in, which
would be erroneous."

From these cases it is apparent that in actions of
tort this court has frequently announced the rule
that damages for mental suffering may be recovered,
although there is no physical injury. And, if this be
so, why is not this a case where they ought to be
allowed? It cannot be possible that here is a legal
wrong for which the law affords no remedy. The

wrong is plain, the injury is apparent, and we think the law affords a remedy, for compensatory damages, under the rules above given. It must not be understood to follow that, in all actions *ex delicto*, damages for mental suffering may be allowed. There must be some direct and proximate connection between the wrong done and the injury to the feelings, to justify a recovery for mental anguish. But, when there this connection is so manifest as in the case at bar, we think such damages ought to be allowed. It is very appropriately said, however, in one of the cases which has been cited, that "great caution should be used in the trial of cases like this, as it will be so easy and natural to confound the corroding grief occasioned by the loss of a parent or other relative with the disappointment and regret occasioned by the fault or neglect of the company, for it is only the latter for which recovery may be had; and the attention of juries might well be directed to this fact." It is not necessary for us to determine on which theory damages for mental anguish are recoverable. If we find they are recoverable, either in an action for breach of contract, or by reason of a breach of public duty, then the instruction given by the lower court was correct, and should be sustained. It will be noticed that, in some of the cases holding to a contrary doctrine from that here announced, recovery was denied because of the form of the action; that is to say, it was held that the action in the particular case was for breach of contract, and that damages for mental suffering were not recoverable in such an action. Whether they would be recoverable in actions *ex delicto* or not was not determined. Let us look for a moment at some of the objections urged to such a rule as we have announced.

First. It is said that such suffering is speculative and remote. We have, as we think, answered this by

showing that in actions of this kind it is direct and proximate to the wrong complained of.

Second. It is urged that such damages are sentimental, are vague and shadowy, and that there is no standard by which an injury can be justly compensated or approximately measured. This objection is answered if we find any case in which such damages are allowed, for if they may be allowed in one kind of case they may in all, so far as this objection is concerned. We have already seen numbers of cases, both from this and other states, wherein it is held that damages for mental suffering, independent of physical injury, may be recovered. It is conceded by counsel that damages can be recovered for mental suffering when accompanied by physical pain or bodily suffering. If this be true, then let us ask how they can be any more accurately measured when so accompanied than when not. When it is once conceded that mental anguish can be considered, and compensation made therefor, then the objection last urged falls to the ground.

Third. It is said there is no principle on which such damages can be recovered. We have endeavored to show, to the best of our ability, that there is abundant authority to justify a recovery in such cases.

Fourth. It is contended that the rule opens up a vast and fruitful field for speculative litigation. We have endeavored to so guard and limit the rule that there may be no mistaking its operation and effect. If recovery is for breach of the contract, then it can only be had because of the subject-matter,—the fact that it is intelligence that is transmitted, and the feelings only affected. And, if the recovery is had because it is a tort, then a somewhat similar limitation is made, which we have tried to make apparent. If, as thus limited, the rule opens up a vast and fruitful field of

litigation, it is only because telegraph companies fail to do their duty. We cannot think that a rule which will tend to make telegraph companies more careful in the matter of delivering their messages will be fraught with such fearful results as counsel imagine. The single, plain duty of a telegraph company is to make transmission and delivery of messages intrusted to it with promptitude and accuracy. When that is done its responsibility is ended. When it is omitted, through negligence, the company should answer for all injury resulting, whether to the feelings or the purse, one or both, subject to the proviso that the injury must be the natural and direct consequence of the negligent act. We cannot conceive of any danger in such a rule. It seems to us to be in accord with the enlightened spirit of modern jurisprudence and that in actual practice no evil can result therefrom. Juries may be prone, in cases of this kind, to place their estimates high; but the judge is ever present, with a restraining power, ample to prevent unconscionable and unjust verdicts. Without further extending this opinion, it is sufficient to say that the instruction of the District Court was correct, and the judgment is *affirmed*.

Kinne, J.—(Dissenting). I am of the opinion that the general rule that damages are not recoverable for mental pain and suffering not induced by or connected with a physical injury should govern in this class of cases. I admit that, under the rule I contend for, no adequate compensation is possible in this case; but that is not a reason for abrogating a rule of such long standing, and thereby opening up a vast field for litigation, wherein, in my judgment, it will be found impossible to limit the application of the rule adopted by the majority opinion as is therein indicated. The question is properly one for legislative action, wherein the

application of the rule may be definitely fixed. Nor do I think that the section of our statute referred to in any way changes the general rule as to damages in this class of cases. I am not content with either the argument of the majority opinion, or the result reached. My views are so fully set forth in the cases cited in the opinion as being opposed to the allowance of damages for mental pain and suffering in such cases that I need not set them forth in detail. For the error in the instruction the case should be *reversed*.