## Rosa Zabron v. The Cunard Steamship Company, Limited, Appellant.

**Actions:** SERVICE OF NOTICE UPON AGENT. The sale of tickets is a part of the business of a steamship company engaged in the carriage of passengers; and where an agency for the sale of European passage tickets is established in this state, an action for damages growing out of the negligence of the agent in charge of the business may be instituted in the county of such agency by service of notice upon the agent, under the provisions of Code section 3500.

**Same.** Where a steamship company accepts the benefit of the act of another in the sale of tickets the latter becomes its agent; and an action for negligence of the agent may be maintained against the principal where the sale was effected.

**Carriage of passengers:** NEGLIGENCE: DEFENSES. Where the embarkation slip of a steamship company sent to a passenger in advance of a passage ticket required notice to the company of the date of sailing to secure a berth reservation, failure to give such notice was not a defense to an action for the negligence of defendant's agent in failing to promptly forward the ticket.

**Same:** TORT ACTION. The violation of a contract may create a cause of action for tort. Thus where the agent of a steamship company sold a passage ticket entitling plaintiff to transportation from a foreign port, but negligently failed to forward the ticket as agreed, plaintiff was entitled to damages for the wrong.

**Same:** DAMAGES: MENTAL SUFFERING. Where a steamship company refused to accept a passenger for transportation from a foreign port because of the failure of its agent to promptly forward her ticket, and the passenger was delayed for some time and compelled to labor to support herself for several months and until

the ticket was received, she was not entitled to recover damages for mental suffering due simply to disappointment, having suffered no physical injury.

*Appeal from Cedar Rapids Superior Court.*—HON. C. B. ROBBINS, Judge.

FRIDAY, MAY 12, 1911.

IN June, 1908, the plaintiff lived in Russia, and her brother, Isaac Zabron, lived in Cedar Rapids, Iowa. The brother, desiring to have the plaintiff come to Cedar Rapids to live, went to the defendant's agent in Cedar Rapids to provide for her passage to Cedar Rapids. The agent told him that the price of a prepaid third-class ticket from the port of Libau, Russia, to Cedar Rapids was $56.05. The brother had only $50 in cash at the time. The agent took this amount, however, and issued to Zabron a receipt, showing payment in full for the ticket, under an agreement, as Zabron testified, that the agent would at once forward a ticket to the defendant's agents at Libau, and that the remainder of the price could be paid later. The agent testified that at the same time he gave Zabron an embarkation slip, and directed that he send it to the plaintiff at once. Zabron mailed the slip given to him to the plaintiff on the same day, which was June 8, 1908, he wrote her that he had bought a ticket for her passage from Libau to Cedar Rapids, and for her to go to Libau, where she would get the ticket. Her brother's letter and the embarkation slip reached the plaintiff at her home in Kreslovka, Russia, distant from Libau a journey of a day and a half by rail, in due time. The embarkation slip was simply a notice of intention to embark, which provided that it must be sent by passengers to the company's office or agent at port of departure at least fourteen days in advance, or berths would not be reserved. The plaintiff did not notify the defendant in advance of her intention to embark; but, after securing her

passports, she went to Libau, arriving there on the 31st of October, 1908. She immediately presented the slip, which showed that her passage had been prepaid, but was told by the defendant's agent that no ticket for her passage had been received, and that she would have to wait for it. They took the slip and her passports, and she waited there until December 16, before the ticket was furnished her and she was allowed to embark. When she arrived at Libau, the plaintiff had only about $3 in money, and was a stranger, and she advised the defendants's agents of these facts. The Cedar Rapids agent sent the ticket to the defendant's Chicago office November 11, 1908. The plaintiff was compelled to work for her lodging while detained in Libau, and claims that her health was greatly impaired by the severity of such work, and by her lack of food to properly sustain herself. She also alleged that she suffered great mental pain and anguish. The case was tried to a jury, and she was given $1,000 damages. The defendant appeals. *Reversed.*

*Dawley & Wheeler* and *J. E. MacLeish,* for appellant.

*Barnes & Chamberlain,* for appellee.

SHERWIN, C. J.—It is not denied that Doctor was an agent in Cedar Rapids, with authority to sell tickets for passage from Libau to Cedar Rapids; but the defendant claims that the service of notice on Doctor gave the court no jurisdiction of this case. Section 3500 of the Code provides: "When a corporation, company or individual has an office or agency in any county for the transaction of business, any action growing out of or connected with the business of that office or agency may be brought in the county where such office or agency is located." It was clearly a part of

1. ACTIONS: service ·of notice upon agent.

the defendant's business as a carrier to sell tickets for passage over its own and connecting lines. It establishes agencies in the several cities of the country for the purpose of securing business for its line of steamships, and the sale of its tickets is, in our judgment, as much a part of its business as the actual carriage of passengers thus obtained. Its appointment of an agent in Cedar Rapids established an agency there for the transaction of business, within the meaning of the statute. *Milligan v. Davis,* 49 Iowa, 126.

Furthermore, the defendant accepted the benefits of the sale made by Doctor, and thereby ratified the transaction, and should be charged with its burdens. *Milligan v. Davis, supra.* Section 3541 of the Code also provides that an appearance, special or otherwise, avoids the necessity of further notice. See, also, *Moffitt v. Chronicle Co.,* 107 Iowa, 407. The court clearly had jurisdiction of the subject matter, and, by acquiring jurisdiction of the person of the defendant in an authorized manner, its jurisdiction was complete.

2. SAME.

As we have already said, the plaintiff did not notify the defendant's agents in Libau of her intention to embark until she arrived in Libau, and because of this failure on her part the defendant says that she had no cause of action. A sufficient answer to this contention is that, if it be conceded that the slip sent to the plaintiff contained such a requirement, which is in dispute, it appears that such notice was required for the purpose only of reserving a berth for the passenger, and no complaint on that score is made. Nor was the question of a berth involved in defendant's refusal to sooner accept the plaintiff as a passenger. Moreover, there was nothing on the slip, even if it was as the defendant contends, to call the plaintiff's attention to the fact that the fourteen days' notice was for any other purpose than to secure a berth.

3. CARRIAGE OF PASSENGERS: negligence: defenses.

The appellant further says that the action was based solely on a breach of contract, and that there was error in submitting any question of the defendant's negligence.  The plaintiff's petition clearly alleged negligence on the part of the defendant in failing to forward the ticket until five months after its purchase.  So far, then, as the pleading is concerned, there can be no question but what the cause of action was based on a tort.  That a violation of a contract may create a cause of action for a tort is well settled generally.  *Owen Brothers v. Railway Co.*, 139 Iowa, 538, and cases cited therein; *Mentzer v. Telegraph Co.*, 93 Iowa, 752.

4. Same: tort actions.

The only serious question is whether the instant case falls within the rule thus established.  We think it does.  The defendant was a common carrier, and, as a part of its business as such, it undertook, not only to sell tickets in this country for carriage from European points to the place of sale, but to forward such tickets to its agents at the port of embarkation.  That was a part of its business as a carrier of passengers.  One of the conditions of the sale was that the ticket should be so forwarded, and we are unable to find any sound reason for saying that the transaction should be so divided as to exempt the defendant from a charge of negligence in failing to send forward a ticket that has already been paid for.  We think the rule of the cases cited is applicable here, and that an action for tort may be sustained.  It was the defendant's duty to accept plaintiff as a passenger upon her compliance with its rules, and a failure to do so would create liability.  When she bought and paid for a ticket, with an agreement as a part of the transaction that it would be at once forwarded to her, it was a part of its duty as a public servant to so forward it, and a failure to do so was negligence.

The question of the plaintiff's contributory negligence

in not notifying the defendant's agent of her intention to embark, before she arrived at Libau and presented herself to said agent, was submitted to the jury under an instruction to the effect that, if she did not so notify the agents, and, further, that had she given said notice to them, they would have informed her, prior to her departure from her home, that her ticket had not arrived, she could not recover for anything more than her loss of time, caused by the delay in forwarding the ticket to Libau. The plaintiff alleged, and the evidence sustained the allegation, that when she arrived in Libau she had only sufficient funds to pay for her food during her trip to Cedar Rapids, and was without money with which to buy another ticket to Libau, or with which to return to her home, and that she so told the defendant's agents. She testified that when the agents refused to send her on a ship that sailed soon after she arrived in Libau she "felt very, very bad when the rest started away on the ship," and she "could not go, and was left sitting there;" and, further, "I was very shameful; I felt as though the world had come to an end; as though all the world had fell on me." To sustain herself while waiting for her ticket, the plaintiff was obliged to and did secure employment where she paid for her lodging with her work, and, as we understand the record, she bought her meals; but she claims that she was overworked, and that she was financially unable to buy sufficient food, and that in consequence thereof her health became greatly impaired.

The court instructed that the plaintiff might recover for the mental pain and suffering caused by the defendant's negligence in neglecting to forward the ticket. We are of the opinion that this is not a case where recovery may be had for mental suffering, disconnected from physical impact or injury. The mental suffering here alleged is that occasioned by the refusal of the defendant, through its agents,

5. SAME: damages: mental suffering.

to accept the plaintiff as a passenger, and to permit her to sail, without the usual ticket necessary for the passage. The case is somewhat analogous to one where the passenger is ejected from a train on which he has taken passage; but the analogy is not, in our judgment, complete. In this case there had been no acceptance of the plaintiff as a passenger, nor had the journey been commenced, so far as the defendant was concerned. The defendant exercised no such acts of authority over the plaintiff as would be necessary in an ejectment case. There was no affirmative act on the part of the defendant that could cause feelings of humiliation and disgrace. All that the defendant did was to refuse to permit the plaintiff to embark, and such refusal involved no physical restraint. The agents told the plaintiff that she could not embark until her ticket arrived, and she accepted the situation and did not attempt to board the ship. So there is no question of actual physical restraint, nor of actual ejectment in the case. The plaintiff was undoubtedly disappointed, because she was unable to sail when she had expected to; but disappointments are of every day occurrence, and usually, if not invariably, cause some degree of mental suffering. The facts in this case do not make it an exception to the usual case; for, while the plaintiff told the agents that she did not have with her sufficient funds to buy another ticket or to return to her home in the interior, there is no evidence tending even to show that the agents knew anything about her circumstances generally, or knew that she could not readily procure all the funds she needed. As a matter of fact, her mother did send her money twice while she was waiting in Libau. The amount was not large, but it was enough to take her back to her home, had she seen fit to return. To hold the defendant liable for mental suffering in this case would require us to go a step farther than any of our previous decisions have gone, and place us in conflict with the great weight of authority.

In the telegraph cases, of which *Mentzer v. Telegraph Co.,* 93 Iowa, 752, is the leading one, the decisions are based on peculiar relationship and the mental pain that must necessarily follow in cases where the party is deprived of privileges growing out of such relationship. In the *Mentzer* case there was a failure to deliver a message, notifying the plaintiff of the death of his mother, and it was there said: "The general rule is . . . that mental anguish and suffering, resulting from mere negligence, unaccompanied with injuries to the person, can not be made the basis of an action for damages. . . . And doubtless this is the rule today in all ordinary actions, either *ex contractu* or *ex delicto.* . . . Mental suffering has never been considered as within the contemplation of the parties at the time the contract is entered into, and recovery can not be had therefor. But few contracts have any direct relation to the feelings and sensibilities of the parties entering into them, and the pain growing out of the ordinary breach of contracts relating to property is entirely different from that suffered from a death message." In *Shepard v. Railway Co.,* 77 Iowa, 54, and in *Curtis v. Railway Co.,* 87 Iowa, 622, the plaintiffs were forcibly ejected from trains. *McKinley v. Railway Co.,* 44 Iowa, 314, was an assault case. *Parkhurst v. Masteller,* 57 Iowa, 474, was a case growing out of a malicious prosecution of a criminal charge. In that case the character as well as the feelings, of the plaintiff was involved. In *Watson v. Dilts,* 116 Iowa, 249, the defendant entered the plaintiff's home surreptitiously in the night, and was a wanton trespasser. In Texas, where the court has uniformly allowed a recovery for mental suffering in telegraph cases involving sickness or death, it was held that no recovery for mental suffering could be allowed for a failure to deliver money by telegraph. *De Voegler v. Telegraph Co.,* 10 Tex. Civ. App. 229 (30 S. W. 1107). In *Lee v. City of Burlington,* 113 Iowa, 356, recovery of the value

of a horse killed by fright was sought, and we said: "As a general rule, no recovery may be had for injuries resulting from fright caused by the negligence of another, where no immediate personal injury is received. This is the settled rule as to human beings." See, also, *Braun v. Craven*, 175 Ill. 401 (51 N. E. 657, 42 L. R. A. 199), and cases reviewed therein.

The appellant complains of two or three rulings in the introduction of evidence and of instruction; but, as the same questions are not likely to arise on a retrial, we need not further notice them.

For the reason pointed out, the judgment is *reversed.*