Rose Marie NIBLO, Appellee,

v.

PARR MANUFACTURING,
INC., Appellant.

No. 88–1531.

Supreme Court of Iowa.

Aug. 16, 1989.

Jeffrey A. Krausman and Laura Goecke Burns of Belin, Harris, Helmick, Tesdell, Lamson & McCormick, P.C., Des Moines, for appellant.

Emil Trott, Jr. of Barrett & Trott, Des Moines, for appellee.

SCHULTZ, Justice.

In this retaliatory discharge case, employee Rose Marie Niblo recovered damages for loss of wages and emotional distress. The employer, Parr Manufacturing, Inc., challenges the allowance of damages for emotional distress arising out of this tort. If such damages are recoverable, it urges that the distress must be severe. Parr also claims plaintiff failed to present sufficient evidence to establish a claim for wrongful discharge. We affirm.

Plaintiff began her employment with defendant in June, 1985. She worked with plastisol, a chemical which is used to cohere the parts of fuel filters. In late 1985, she noticed that she was developing a skin condition on her face. She was referred to a dermatologist who diagnosed her skin condition as work-related. Following conversations with her supervisor and the president of the corporation, she was terminated from her employment.

Plaintiff brought this action for wrongful discharge, alleging she was discharged from her employment in violation of public policy. The trial court instructed the jury that plaintiff had the burden of proving that she was fired because she wanted to file, or threatened to file, a worker's compensation claim. The jury returned a verdict of $12,000 for plaintiff.

I. *Sufficiency of Evidence.* At the close of plaintiff's evidence, defendant moved for a directed verdict based on the sufficiency of plaintiff's evidence to establish a claim for wrongful discharge. This claim was renewed in a motion for judgment notwithstanding the verdict. In each instance the trial court denied the motion. Defendant claims the trial court erred by these rulings.

It is undisputed that plaintiff's employment was at-will and that there was no definite term or contract governing the terms of her employment. Our general rule is that an employee at-will can ordinarily be fired at anytime by an employer. *Abrisz v. Pulley Freight Lines, Inc.,* 270 N.W.2d 454, 455 (Iowa 1978). We recognized in *Abrisz* that under proper circumstances we would recognize a common law claim for wrongful discharge from employment when such employment is terminated for reasons contrary to public policy. *Id.*

More recently, we adopted this public policy exception and applied it in a case where the discharge allegedly was due to the filing of a worker's compensation claim. *Springer v. Weeks & Leo Co.,* 429 N.W.2d 558, 560–61 (Iowa 1988). We described the cause of action as "tortious interference with the contract of hire." *Id.* at 560. We stated:

> We deem this to be clear expression that it is the public policy of this state that employee's right to seek the compensation which is granted by law for work-related injuries should not be interfered with regardless of the terms of the contract of hire. To permit the type of retaliatory discharge which has been al-

leged in this case to go without a remedy would fly in the face of this policy. *Id.* at 560–61.

On appeal defendant does not challenge our holding in *Springer* nor the trial court's instruction detailing the required proof of discharge based on plaintiff's desire or threat to file a compensation claim. Defendant limits its claim to the sufficiency of the evidence on this element. Specifically, defendant urges that there is not sufficient evidence that plaintiff was going to file a worker's compensation claim for the question to go to the jury. Defendant correctly asserts that plaintiff never testified that she wanted to or intended to file a worker's compensation claim, nor has she done so. Defendant maintains the evidence merely shows that its management and plaintiff had a dispute concerning the payment of her doctor bills.

When considering the propriety of a motion for directed verdict, the court views the evidence in the light most favorable to the party against whom the motion was made. Iowa R.App.P. 14(f)(2). Direct and circumstantial evidence are equally probative. Iowa R.App.P. 14(f)(16). If reasonable minds might draw different inferences from the facts, whether they are in dispute or contradicted, a jury question is engendered. Iowa R.App.P. 14(f)(17).

■ By applying these principles, a jury could have inferred from the evidence that plaintiff's discharge resulted from something more than a dispute over doctor bills. Plaintiff contacted her supervisor about going to a doctor. The supervisor ignored her first inquiry and responded to her second request by stating that he did not care what she did, but that defendant was not going to pay for her to go to a doctor. After plaintiff went to a dermatologist, she told the president of the defendant company of her visit and of the doctor's opinion that her skin condition was work-related. After a follow-up visit with the doctor, plaintiff was informed that she had a severe case of chloracne, caused by contact with chemicals at work. When she told the president that she needed goggles, protective cream and continued treatment, the president became irate. He told plaintiff that he was not going to pay workmen's compensation or unemployment benefits and that he did not think that her skin problem was his fault, or "factory related." He said that he was not going to pay to have plaintiff's face worked on at all. At the conclusion of this outburst, he fired plaintiff.

The issue of whether plaintiff threatened to file a compensation claim was for the jury. Plaintiff need not personally testify of her threat or intent. She supplied this evidence by testimony setting out the president's statements concerning compensation. A jury could deduce from this evidence that the plaintiff was discharged because she was threatening to file a claim for these benefits. The trial court did not abuse its discretion in denying a motion for a new trial based on the sufficiency of the evidence.

II. *Emotional Distress as an Element of Damage.* The trial court allowed the jury to assess damages for emotional distress as part of the recovery allowed for the tort of wrongful discharge. In objecting to the instructions, defendant claimed that emotional distress is not a proper element of damage for that tort. In *Springer,* we recognized the employee's remedy, but we did not address issues concerning damages. 429 N.W.2d at 560–61. Consequently, this is an issue of first impression for this court.

■ Our tort cases vary on the recoverability of damages for mental anguish. The answer seems to lie in the nature of the tort action. In recent years we have recognized a cause of action for the tort of intentional infliction of mental distress. *Meyer v. Nottger,* 241 N.W.2d 911, 918 (Iowa 1976); *Amsden v. Grinnell Mut. Reinsurance Co.,* 203 N.W.2d 252, 253–55 (Iowa 1972). This is a separate and independent action which allows recovery for severe mental distress caused by a defendant's outrageous conduct. *See* Restatement (Second) of Torts § 46 (1965).

Recognition of this independent cause of action for emotional distress was foreshad-

owed in two earlier Iowa cases. *See Curnutt v. Wolf*, 244 Iowa 683, 688, 57 N.W.2d 915, 918 (1953) (allowing emotional distress damages for willful or malicious threatening phone calls); *Barnett v. Collection Serv.*, 214 Iowa 1303, 1312, 242 N.W. 25, 28 (1932) (allowing damages for mental anguish intentionally caused by threatening letters from debt collector). Plaintiff makes no such independent claim for mental distress here. She, instead, claims that defendant's independent tortious act of wrongful discharge caused her damages for loss of income and mental distress.

We have long adhered to the rule that in negligence cases no recovery is permitted for emotional distress or mental anguish, unless there is an accompanying physical injury. *Wambsgans v. Price*, 274 N.W.2d 362, 365 (Iowa 1979); *Zabron v. Cunard S.S. Co.*, 151 Iowa 345, 351–52, 131 N.W. 18, 20–21 (1911); *Lee v. City of Burlington*, 113 Iowa 356, 357, 85 N.W. 618, 619 (1901). We have allowed recovery for emotional distress without physical injury, however, when a bystander suffered mental distress caused by witnessing the negligent infliction of serious injury to a close relative, *Barnhill v. Davis*, 300 N.W.2d 104, 108 (Iowa 1981), and when a telegraph company negligently failed to deliver a death message which prevented plaintiff from attending his mother's funeral. *Mentzer v. Western Union Tel. Co.*, 93 Iowa 752, 768–71, 62 N.W. 1, 5–6 (1895); *see also Cowan v. Western Union Tel. Co.*, 122 Iowa 379, 386–87, 98 N.W. 281, 282–84 (1904) (mental anguish recoverable damage for negligence in transmission of a telegraphic message notifying relatives of death and the arrival of widow and body).

When the tort involves willful or unlawful conduct, rather than negligence, recovery of mental distress damages has been allowed despite a lack of injury in a variety of different factual situations. *See, e.g., Kraft v. City of Bettendorf*, 359 N.W.2d 466, 471 (Iowa 1984) (false arrest); *Blakely v. Estate of Shortal*, 236 Iowa 787, 791–93, 20 N.W.2d 28, 31 (1945) (act of suicide in plaintiff's kitchen); *Holdorf v. Holdorf*, 185 Iowa 838, 842, 169 N.W. 737, 738–39 (1919) (willful assault); *Johnson v. Hahn*,

168 Iowa 147, 149, 150 N.W. 6, 6 (1914) (repeated solicitation to commit adultery); *Watson v. Dilts*, 116 Iowa 249, 252, 89 N.W. 1068, 1069 (1902) (encounter with a nighttime trespasser in the home); *Shepard v. Chicago, R.I. & Pac. R.R.*, 77 Iowa 54, 58–9 41 N.W. 564, 565 (1889) (wrongful ejection from a train); *Stevenson v. Belknap*, 6 Iowa 96, 103–05 (1858) (seduction); *see also Craker v. Chicago & Northwestern R.R.*, 36 Wis. 657, 677–79 (1875) (recovery allowed for injured feelings where a conductor kissed a female passenger against her will).

Recently, our court of appeals allowed damages for an emotional distress claim arising out of the tort of interference with an existing contract. *Peterson v. First Nat'l Bank of Iowa*, 392 N.W.2d 158, 167 (Iowa App.1986); *see* Restatement (Second) of Torts § 774A(1)(c) (1977); *accord Trimble v. City & County of Denver*, 697 P.2d 716, 730 (Colo.1985) (plaintiff entitled to damages for mental suffering as a result of the supervisor's intentional interference with contractual relations); *Mooney v. Johnson Cattle Co.*, 291 Or. 709, 718, 634 P.2d 1333, 1343 (1981) (damages for emotional suffering could be recovered in an intentional interference with contractual relations action); *cf. Hobson v. Wilson*, 737 F.2d 1, 61–62 (D.C.Cir.1984) (emotional distress damages could be compensated in civil rights action), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985); *King v. Acker*, 725 S.W.2d 750, 754, 756 (Tex.Ct. App.1987) (recoverable damages for tortious interference with inheritance rights include losses for emotional distress).

■ These cases teach us that the question of whether damages for emotional distress are recoverable in a given tort depends on the theory of recovery in each type of action. In cases grounded on negligence where there is no duty to exercise ordinary care to avoid causing emotional harm, recovery is generally denied for the infliction of mental distress without an accompanying physical injury. Consequently, this court has approved the dismissal of an action where the only damage claimed was the mental distress caused by the neg-

ligent telephoning of truthful information by violent and profane language. *Kramer v. Ricksmeier*, 159 Iowa 48, 51, 139 N.W. 1091, 1091–92 (1913).

We allowed a limited exception to this rule in *Mentzer* and *Cowan*, where the telegraph company negligently failed to deliver messages concerning deaths. In *Mentzer* it was reasoned that the telegraph company owed a duty of due care to the public, somewhat akin to that of a common carrier, and that the enforcement of that duty, by allowance of damages, would force them to be more careful. 93 Iowa at 757–58, 771, 62 N.W. at 3, 7; *see also Cowan*, 122 Iowa at 384–85, 98 N.W. at 283. Thus the exceptions created in the telegraph message cases were established in large part on public policy considerations.

We have been lenient in allowing incidental damages for mental distress in tort cases when the theory of recovery includes intentional acts or those arising out of illegal conduct. We have indicated that such damages are actual or compensatory rather than vindictive or punitive. *Mentzer*, 93 Iowa at 767, 62 N.W. at 6.

■ In considering the cause of action for wrongful discharge, we believe that damages caused by mental distress may properly be considered in addition to the lost earnings caused by the termination of employment. We recognized the tort of wrongful discharge because of public policy considerations. *Springer*, 429 N.W.2d at 560–61. These considerations are similar to those expressed in the telegraph message cases of *Mentzer* and *Cowan*. A wrongful or retaliatory discharge in violation of public policy is an intentional wrong committed by the employer against an employee who chooses to exercise some substantial right. *See, e.g., Perks v. Firestone Tire & Rubber Co.*, 611 F.2d 1363, 1366 (3d Cir.1979) (discharge for failure to submit to illegal polygraphy test would be actionable). We believe that public policy also requires us to allow a wrongfully discharged employee a remedy for his or her complete injury.

■ Other reasons support this conclusion. While it is not a crime or an act requiring a malicious motive or outrageous conduct, wrongful discharge offends standards of fair conduct and normally will cause the employee damages in lost income. In addition to his monetary loss of wages, the employee may suffer mentally. "Humiliation, wounded pride, and the like may cause very acute mental anguish." *Mentzer*, 93 Iowa at 767, 62 N.W. at 6; *see also Little v. York County Earned Income Tax Bureau*, 333 Pa.Super. 8, 20–22, 481 A.2d 1194, 1200–02 (1984) (damages for humiliation and degradation may be awarded even though tort of negligent misrepresentation does not involve intentional conduct). We know of no logical reason why a wrongfully discharged employee's damages should be limited to out-of-pocket loss of income, when the employee also suffers causally connected emotional harm. Distressful emotions not involving bodily injury are compensable in actions for the infringement of some other interest. *See e.g.* Restatement (Second) of Torts § 905 comment c (1977). In many instances there may be recovery for emotional distress as an additional, or "parasitic," element of damages for a tort that invades another's legally protected interest. Restatement (Second) of Torts § 47 comment b (1965). We believe that fairness alone justifies the allowance of a full recovery in this type of a tort.

The vast majority of jurisdictions that base the cause of action for wrongful discharge on intentional tort principles, rather than on negligence, allow recovery for emotional distress. The court in *Harless v. First National Bank*, 169 W.Va. 673, 689–90, 289 S.E.2d 692, 702 (1982), stated: "We believe that the tort of retaliatory discharge carries with it sufficient indicia of intent, thus, damages for emotional distress may be recovered as part of the compensatory damages." *See also Malik v. Apex Int'l Alloys, Inc.*, 762 F.2d 77, 80–81 (10th Cir.1985) (mental anguish recoverable as reasonable damages for retaliatory discharge under Oklahoma Workers' Compensation Act); *Wiskotoni v. Michigan Nat'l Bank–West*, 716 F.2d 378, 389 (6th Cir.

1983) (emotional distress recoverable as ordinary damages for wrongful termination under Michigan tort law); *Cancellier v. Federated Dep't Stores,* 672 F.2d 1312, 1318 (9th Cir.) (retaliatory discharge sounds in both contract and tort and gives rise to emotional distress damages), *cert. denied,* 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982); *Smith v. Atlas Off-Shore Boat Serv., Inc.,* 653 F.2d 1057, 1064 (5th Cir.1981) (maritime law recognizes retaliatory discharge as intentional tort and allows recovery of damages for mental anguish); *Perry v. Hartz Mountain Corp.,* 537 F.Supp. 1387, 1391 (S.D.Ind.1982) (emotional distress damages are compensatory damages under the intentional tort of retaliatory discharge); *Frampton v. Central Ind. Gas Co.,* 260 Ind. 249, 252–53, 297 N.E.2d 425, 428 (1973) (retaliatory discharge constitutes an intentional, wrongful act which is fully compensable); *Kamrath v. Suburban Nat'l Bank,* 363 N.W.2d 108, 111 (Minn.Ct.App.1985) (violation of statutory tort allows emotional distress damages); *Holien v. Sears, Roebuck & Co.,* 298 Or. 76, 98–100, 689 P.2d 1292, 1302–03 (1984) (general damages for emotional distress compensable under common law wrongful discharge claim); *Sea–Land Serv., Inc. v. O'Neal,* 224 Va. 343, 354, 297 S.E.2d 647, 653 (1982) (intentional tort allows recovery of damages for emotional distress); *Cagle v. Burns & Roe, Inc.,* 106 Wash.2d 911, 916–18, 726 P.2d 434, 436–38 (1986) (damages for emotional distress are recoverable for the intentional tort of wrongful termination in violation of public policy).

Based on our prior treatment of the issue of emotional damages in both intentional torts and negligence law, and the overwhelming weight of authority from other jurisdictions, we hold that emotional distress damages are recoverable for retaliatory discharge in violation of public policy.

III. *Severe Distress.* Defendant argues that if emotional distress is recoverable, such distress must be severe before it is compensable. Defendant relies upon our holding in *Poulsen v. Russell,* 300 N.W.2d 289, 297 (Iowa 1981) and the Restatement (Second) of Torts section 46 comment j

(1965). Both our holding in *Poulsen* and section 46 speak to the independent tort of intentional infliction of emotional distress, rather than to damages from emotional distress that accompany the commission of another tort. Consequently, this authority is readily distinguishable.

We have not addressed this specific issue in previous cases. In *Barnhill* when we allowed a tort claim by a bystander who witnessed the negligent infliction of harm to a family member, we required that the emotional distress to the bystander be serious. 300 N.W.2d at 108. *Barnhill* was a case where the plaintiff suffered no physical and personal injury but claimed emotional distress because of fear for his mother's safety. *Id.* at 105.

*Barnhill* was an exception to the normal rule that damages for emotional distress must be accompanied by physical harm. Although we allowed recovery, we were concerned "that there must be some end to liability for a person's negligent acts." *Id.* at 107. Consequently, we placed restrictions on the bystander's observance of the accident and relationship to the victim. *Id.* In addition, we required "that the bystander's claim is serious and has some guarantee of genuineness." *Id.*

■ Unlike *Barnhill,* the tort of wrongful discharge is not grounded on negligence but derived from public policy considerations growing out of willful misconduct. When the tort arises out of the willful act of the employer, an employee should not be limited to damages for only serious emotional distress. Under such circumstances we believe that factfinders can properly distinguish genuine from phony claims. We ask them to perform the same task in a myriad of other situations. Requiring proof of severe injury would take away damages from those plaintiffs who suffered less, but nevertheless suffered genuine emotional harm.

In *Peterson* the court of appeals allowed the recovery of emotional distress damages caused by interference with contractual relations. It differentiated between the claim for emotional distress arising out of

that cause of action and the tort of intentional infliction of emotional distress. 392 N.W.2d at 167. The court relied upon the principles of Restatement (Second) of Torts section 774A(1)(c) (1977), that suggest that damages for emotional distress for such a tort should be allowed without requiring proof of severe emotional distress, if the harm was reasonably to be expected to result from the interference. *Id.*

■ Emotional distress, as an incidental damage caused by the tort of wrongful discharge, is comparable with *Peterson* and the cited cases where the cause of action arose from willful or wrongful conduct. It is distinct from the tort of intentional infliction of emotional harm, which established an independent ground for liability for damages for mental anguish caused by intentional or reckless extreme and outrageous conduct. The requirements of proof are greater, so that the law will not intervene in every case where someone's feelings are hurt or where the mental distress is not severe. *See, e.g., Bossuyt v. Osage Farmers Nat'l Bank*, 360 N.W.2d 769, 777 (Iowa 1985); Restatement (Second) of Torts § 46 comment d (cited with approval in *Roalson v. Chaney*, 334 N.W.2d 754, 756 (Iowa 1983)) and comment j (1965).

In summary, we see no logical reason to require a plaintiff to prove that the emotional distress was severe when the tort is retaliatory discharge in violation of public policy. This conclusion accords with the decisions from other jurisdictions that have allowed emotional distress for this cause of action without requiring that the distress be severe. *See, e.g., Malik*, 762 F.2d at 80–81; *Wiskotoni*, 716 F.2d at 388–89; *Cagle*, 106 Wash.2d at 920, 726 P.2d at 438–39; *Harless*, 169 W.Va. at 690, 289 S.E.2d at 702.

IV. *Summary.* We hold that the trial court correctly rejected defendant's motions and properly instructed the jury on the issue of emotional distress.

AFFIRMED.

All Justices concur except McGIVERIN, C.J., who dissents, and HARRIS, J., who takes no part.

McGIVERIN, Chief Justice (dissenting).

I respectfully dissent from divisions II and III of the majority's opinion and the result. I would hold that emotional distress is not a recoverable element of damages in a retaliatory discharge case or, at the very least, that such emotional distress must be severe to be recoverable.

An important objective of allowing a tort action for retaliatory discharge is to encourage job security, especially for those workers employed at will. The elements of damages for the action should be fashioned to reflect that objective. *See Vigil v. Arzola*, 102 N.M. 682, 699 P.2d 613, 620–21 (App.1983) (recognizing employee's tort action for retaliatory discharge but disallowing emotional distress as a recoverable element of damages). As the *Vigil* court stated, "What is at stake is job security, not reparation for every conceivable ill." *Id.* I believe that in Iowa a discharged worker's feelings are adequately protected by our recognition of an action for outrageous infliction of emotional distress in the employment context. *See, e.g., Northrup v. Farmland Industries, Inc.*, 372 N.W.2d 193, 197–99 (Iowa 1985).

If we are to allow emotional distress as an element of damages in retaliatory discharge cases, however, I would at least require that the distress be severe before such damages are awarded. The tort law should encourage a certain level of mental toughness; every inconsiderate and unkind act cannot be compensable. *Northrup*, 372 N.W.2d at 198–99. Requiring that a plaintiff's harm be severe and genuine would establish some reasonable end to liability for an employer's wrongful discharge of an employee. *Cf. Barnhill v. Davis*, 300 N.W.2d 104, 107 (Iowa 1981) (recognizing tortfeasor's liability to a bystander who suffers "serious" mental distress, which ordinarily would be mental distress accompanied by physical manifestations of the distress).

I would hold that damages for emotional distress are not available in a retaliatory discharge case. At the very least, such

emotional distress should be severe to be recoverable as an element of damages. Therefore, I dissent.