**FARMERS STATE BANK and J.E.M.S., Inc., Appellants,**

v.

**UNITED CENTRAL BANK OF DES MOINES, IOWA and First Interstate Bank of Des Moines, Iowa, N.A., Appellees.**

No. 89–1235.

Supreme Court of Iowa.

Nov. 21, 1990.

David P. Jennett of the McCullough Law Firm, Sac City, for appellants.

W. Don Brittin, Jr. and Hayward L. Draper of Nyemaster, Goode, McLaughlin, Voigts, West, Hansell & O'Brien, P.C., Des Moines, for appellees.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, SNELL, and ANDREASEN, JJ.

SCHULTZ, Justice.

This appeal arises out of a dispute between banks over the renewal of a loan participation agreement. Farmers State Bank of Lakeview (Farmers) used United

Central Bank of Des Moines, now named First Interstate Bank of Des Moines, N.A. (Interstate) as a correspondent bank and also sold it loan participations.[1] J.E.M.S., Inc., a one-bank holding corporation, owns over eighty percent of Farmers' stock. In 1982, Farmers loaned money to a farmer, evidenced by three notes, and Interstate purchased loan participations in the notes. After the notes were due in 1983, Farmers consolidated the three notes into one. Interstate refused to continue as a loan participant in the renewal of the loan. J.E.M.S. then participated in this loan.

Following a loss on the loan, Farmers and J.E.M.S. filed an action against Interstate for reimbursement of the portion of the loss attributed to Interstate's failure to renew its loan participation. The district court granted Interstate's motion for summary judgment. We affirm.

The factual dispute centers on whether or not Interstate agreed to participate in the loan renewal. It is undisputed that when a participation loan comes due for payment at the end of its term, the participating bank may renew the loan by signing a new agreement. However, neither the written participation agreement nor any practice in the banking industry requires the participating bank to renew or extend a participation loan. The president of Farmers, who is also the president of J.E.M.S., claims that he met with an Interstate loan officer after the loans became due and that the officer agreed to renew the loan. Interstate denies this meeting or promise.

When Farmers renewed the farmer-debtor's note by consolidating them into one, it paid Interstate the amount of the existing loan participation by a debit on its correspondent bank account. Farmers maintained that it mailed a copy of the new note to Interstate with a request for a credit.

1. A loan participation is an agreement in which "two or more banks join in a loan with each bank lending a portion of the amount to the borrower." *Black's Law Dictionary* 1008 (5th ed. 1979). A true participation is a shared loan, an undertaking by one financial institution, usually called the 'lead' or originating bank, to divide a large loan into shares which is then offered for sale to a 'participant' or 'correspon- dent' bank. Ledwidge, *Loan Participations Among Commercial Banks*, 51 Tenn.L.Rev. 519, 520 n. 3 (1984). In a true participation arrangement between commercial banks, there is no debtor-creditor relationship. *Id.* at 524. "The promise of the [Originating] Bank is not to pay money as in repaying a debt, but rather only to remit to the [Participant] Bank its share of what the borrower pays." *Id.*

Interstate did not credit Farmers' account for a new loan participation agreement and later refused to participate in the new loan. Since Farmers exceeded its legal lending limit, J.E.M.S. purchased the identical participation loan that Interstate declined.

In its ruling, the district court stated that plaintiffs sought recovery from Interstate on three theories: (1) promissory estoppel based on the alleged promise made by Interstate's loan officer to renew a loan participation; (2) negligent misrepresentation based on the same alleged promise; and (3) breach of paragraphs 14 and 15 of the 1982 written participation agreement between Farmers and Interstate. In granting Interstate summary judgment, the district court reasoned that Farmers suffered no damages because J.E.M.S. assumed the loan participation agreement and J.E.M.S. had no contractual or other relationship with Interstate. We address the claims of each corporation.

I. *Farmers' claim.* On appeal and in response to the trial court's determination that Farmers had not suffered damages, Farmers raises the issues of: (1) detrimental reliance upon Interstate's representations, and (2) applicability of the collateral source rule. We find no merit in either issue and affirm the dismissal of Farmers' action.

■ First, Farmers claims that it suffered damages when it paid off the Schulte loan participation, relying on representations made by Interstate's loan officer. Even if we assume Farmers could prove that its reliance upon Interstate's representations arose out of promissory estoppel, negligent misrepresentation, or breach of the written participation agreement, Farmers suffered no damages. The undisputed facts show that J.E.M.S., rather than Farmers, suffered the loss on the portion of the loan that Interstate formerly carried when the farmer-debtor only paid part of his obligation. Moreover, the loss occurred after Farmers transferred this portion of the loan to J.E.M.S. Thus, Farmers suffered no damages as a matter of law.

Second, Farmers urges that it can recover damages under the collateral source rule. It asks that the rule be applied to its tort claim of negligent misrepresentation. It contends that J.E.M.S. was not in the business of banking or loan participations and thus assumed the loan obligation only to prevent Farmers from a lending overline violation. It claims that J.E.M.S.'s payment was from a source other than the wrongdoer and should not be credited against Interstate's liability.

■ The collateral source rule has been summarized as follows:

> Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable.

Restatement (Second) of Torts § 920A(2) (1979). It is important to determine the type of benefits that qualify under the rule. A comment to the Restatement rule defines the types of benefits as follows:

> The rule that collateral benefits are not subtracted from the plaintiff's recovery applies to the following types of benefits:
>
> (1) Insurance policies, whether maintained by the plaintiff or a third party.
>
> . . . .
>
> (2) Employment benefits.
>
> . . . .
>
> (3) Gratuities. This applies to cash gratuities and to the rendering of services.
>
> . . . .
>
> (4) Social legislation benefits.
>
> . . . .

*Id.* § 920A comment c. In *Clark v. Berry Seed Co.*, 225 Iowa 262, 271, 280 N.W. 505, 510 (1938), we similarly observed that payments under the rule may come "from affection, philanthropy or contract...."

■ Our first inquiry is whether the payment made by J.E.M.S. is a true "other source" within the meaning of the collateral source rule. Stated otherwise, the issue is whether the assumption of a portion of the farmer-debtor's loan is the type of payment or benefit that is envisioned under

the collateral source rule. We conclude that it is not.

In support of its claim that the collateral source rule is applicable, Farmers cite several tort cases in which we applied the rule. *See, e.g., Atkins v. Baxter*, 423 N.W.2d 6, 7–8 (Iowa 1988) (dram shop liability, insurer paid medical bills); *Stewart v. Madison*, 278 N.W.2d 284, 293–94 (Iowa 1979) (property damage, insurer paid loss); *Clark v. Berry Seed Co.*, 225 Iowa 262, 271, 280 N.W. 505, 510 (1938) (personal injury, employer paid medical expense). In all of these cases, the source of the payment was either an insurance policy or employment benefit. In this case, the payment was made by a parent corporation to prevent a banking regulation violation by its subsidiary. The payment received from J.E.M.S. can neither be traced to an insurance policy, employment benefit, nor to any of the other categories of payments or benefits envisioned in *Clark* or in the Restatement rule comment. The payment is not a benefit that invokes the collateral source rule, thus, we must reject Farmers' second argument.

**II. *J.E.M.S.'s claim*.** The district court denied J.E.M.S.'s claim against Interstate because: (1) J.E.M.S. and Interstate never entered a contractual relationship; and (2) Interstate never made any promises or representations to J.E.M.S. J.E.M.S. does not dispute these facts. Rather it urges that the district court's grant of summary judgment has allowed Interstate to evade the loan liability that is owed at the expense of J.E.M.S. Relying on equitable principles, J.E.M.S. argues that even in the absence of a contract, promise, or representation it is entitled to recover the amounts actually expended for its forced assumption of a debt owed by Interstate.

J.E.M.S. cites *Key Pontiac, Inc. v. Blue Grass Savings Bank*, 265 N.W.2d 906, 908 (Iowa 1978), and urges that its present claim is in effect for "money had and received." This theory of recovery was developed at common law as one of the common counts in general assumpsit to allow an action when a person receives money that in equity and good conscience belongs to another. *Id.* Interstate responds that J.E.M.S. has not alleged or argued in the district court or on appeal any basis upon which it can recover. They further contend that J.E.M.S. mentions equitable issues and claims on appeal when this is a law action for breach of contract or promise.

We first address defendant's response, which is primarily a claim of error preservation. On appeal, J.E.M.S. identifies its theory of recovery as "money had and received." This cause of action is ordinarily one at law, however, it is governed by equitable principles. *Key Pontiac*, 265 N.W.2d at 908. J.E.M.S. did state to the district court that it intended to litigate equitable principles but did not specifically identify "money had and received" as a theory of recovery. Our review of the record reveals that this theory of recovery was neither identified or asserted by J.E.M.S. nor ruled on by the district court. Even if we assume plaintiff raised this theory to the district court, the court specifically limited its ruling to the three legal theories of promissory estoppel, negligent misrepresentation, and breach of the 1982 written participation agreements between Farmers and Interstate.

We need not decide whether J.E.M.S.'s petition and resistance sufficiently informed its opponent and the district court of the general nature of the action because another principle of error preservation prevents our review of the "money had and received" claim. The district court did not rule on J.E.M.S.'s claim of "money had and received" nor on any other equitable claims. J.E.M.S. simply appealed and did not file a motion to enlarge or amend the district court's ruling pursuant to Iowa rule of civil procedure 179(b). Therefore, the court was never given the opportunity to enlarge or amend its findings to include a ruling on the "money had and received" claim that J.E.M.S. now advances on appeal, thus preventing our review of this claim.

A rule 179(b) motion "is essential to preservation of error in a summary judgment ruling when a trial court fails to resolve an

issue, claim, defense, or legal theory properly submitted to it for adjudication." *State Farm Mut. Auto Ins. Co. v. Pflibsen,* 350 N.W.2d 202, 206 (Iowa 1984) (citations omitted); *see also Norton v. Adair County,* 441 N.W.2d 347, 361 (Iowa 1989); *Annear v. State,* 419 N.W.2d 377, 380 (Iowa 1988); *Estate of Grossman v. McCreary,* 373 N.W.2d 113, 114 (Iowa 1985). Issues must be presented to and passed upon by the district court before they may be raised and decided on appeal. *Pflibsen,* 350 N.W.2d at 207. If J.E.M.S. was advancing the "money had and received" theory of recovery that it now seeks on appeal, a rule 179(b) motion would have been the appropriate method to remind the district court that it had not addressed all of J.E.M.S.'s theories of recovery. This was not done; the district court had no opportunity to correct omission of a ruling on a "money had or received" claim or on any other equitable claims. Consequently, the legal theories not included in the district court's ruling were not preserved for our review.

Other than a claim that J.E.M.S. is equitably entitled to the damages it sustained by its participation in the loan in question, J.E.M.S. asserted no further claims. Consequently, we affirm the district court in its dismissal of J.E.M.S.'s claim.

AFFIRMED.