Larry **LAWRENCE**, Appellant,

v.

David **GRINDE** and Childers
& Vestle, P.C., Appellees.

No. 93–1663.

Supreme Court of Iowa.

July 19, 1995.

Tom Riley, Peter C. Riley, and Christopher L. Bruns of Tom Riley Law Firm, P.C., Cedar Rapids, for appellant.

Hugo C. Burdt and Matthew J. Nagle of Lynch, Dallas, Smith & Harmon, P.C., Cedar Rapids, for appellees.

SNELL, Justice.

This is an action for damages claimed by plaintiff against defendant lawyer and his law firm arising out of their preparation of plaintiff's bankruptcy petition. A jury awarded plaintiff damages of $700,000 for emotional distress, and $52,000 for economic loss which included an award of $14,233.49 damages for payment of attorney fees. The defendants filed a motion for judgment notwithstanding the verdict and a motion for new trial. The court denied the motions but ordered a remittitur of damages exceeding $5000 for emotional distress and damages exceeding $14,233.49 for attorney fees. Plaintiff agreed with the remittitur regarding economic loss but appealed from the rest of the judgment. Defendants cross-appealed. We now affirm on plaintiff's appeal and reverse on defendants' cross-appeal.

## I. Factual and Procedural Background

In 1979, Larry Lawrence started his own health and fitness center in Cedar Rapids, Iowa. In March 1986, he moved his equipment to the Cedar Rapids Racquet Club and Fitness Center located on Blairs Ferry Road. Soon thereafter, Lawrence's business failed.

In July of 1986, Lawrence entered into a settlement agreement with an associate, Sheldon Rabinowitz, under which Lawrence agreed not to pursue a potential claim against Rabinowitz in return for a payment of $10,000. The agreement provided that Rabinowitz would directly pay the $10,000 to Lawrence's mother-in-law, Opal Bradley, to partially satisfy a $20,000 debt Lawrence had incurred from Bradley to support the startup of his business. Lawrence and his wife thereafter retained the Cedar Rapids law firm of Dumbaugh & Childers, P.C. in order to pursue a chapter seven bankruptcy. Dumbaugh & Childers, P.C. has since changed its name to Childers & Vestle, P.C. Dumbaugh & Childers assigned attorney David Grinde and paralegal David Marner to the Lawrence bankruptcy.

The law firm provided the Lawrences with a statement of financial affairs questionnaire and schedules to fill out. In response to two questions which sought to identify any possible preferential transfers, the Lawrences wrote "$10,000 to Bradley?" The Lawrences discussed the Rabinowitz and Schillig settlements with Grinde.

After reviewing the Lawrences' questionnaire, Marner compiled and communicated to Grinde a list of questions he had with regard to matters that needed to be answered before the forms could be finalized. One question involved the meaning of "$10,000 to Bradley?" Grinde told Marner they would treat the matter by listing the Bradleys as unsecured creditors. On the final version of the schedules, in response to a question asking generally whether Lawrence had made any assignments or reached any settlements in the year before the filing of the petition, the parties entered "No." In response to a question asking whether Lawrence had made any payments on debts during the year immediately preceding the filing of the bankruptcy, the final answer the parties gave was "Normal as well as possible."

Lawrence subsequently sued Chuck Schillig, the owner of the Cedar Rapids Racquet Club, the Small Business Administration, United States Bank, St. Luke's Hospital, and the president of St. Luke's, Sam Wallace, for business interference. These parties

reached a settlement agreement prior to completion of the action. During discovery in this action, the federal government apparently learned about the transfer to the Bradleys and based on this transaction, indicted Larry Lawrence for bankruptcy fraud in June of 1991. In the government's bill of particulars, it claimed that Lawrence had made false claims in his bankruptcy action by failing to disclose the $10,000 transfer.

In the bankruptcy fraud action, Lawrence retained another Cedar Rapids law firm, and Lawrence's attorney subpoenaed attorney David Grinde to testify on behalf of Lawrence. Grinde did not ultimately testify upon the subpoena of Lawrence's attorney but did testify after the government subpoenaed him. The federal court found Lawrence not guilty of all charges. Two regional newspapers, the Des Moines Register and the Cedar Rapids Gazette, published a number of articles discussing Lawrence's indictment and acquittal.

Lawrence then brought a legal malpractice action against Grinde, R. Fred Dumbaugh, and the law firm of Dumbaugh & Childers for negligently handling his bankruptcy case. Lawrence sought to recover the costs associated with his defense of the criminal action and sought damages for injury to his reputation and emotional distress. The district court granted the defendants' motion for directed verdict on the issue of damage to Lawrence's reputation, but denied a motion to adjudicate law points the defendants asserted, and allowed the jury to consider Lawrence's emotional distress and economic loss claims.

Following a trial, the jury found that the defendants were negligent and awarded Lawrence $700,000 for severe emotional distress and $52,000 for economic loss. The defendants thereafter filed a motion for judgment notwithstanding the verdict, and an alternative motion for new trial. The court denied the defendants' motions but ordered a remittitur of the economic loss including attorney fees in excess of the amount Lawrence actually incurred, that being in excess of $14,233.49. The court also reduced the $700,000 emotional distress award to $5000. A remittitur of the amount exceeding $5000 was ordered on the ground that substantial evidence existed only for an award of such damages. The court found there was no evidence of lost wages as a result of the defendants' acts nor was there evidence that Lawrence sought physical or psychiatric treatment because of the defendants' acts.

Lawrence has appealed the district court's decision and the defendants have cross-appealed on the issue of whether Lawrence could properly recover severe emotional distress damages in this action. On appeal, Lawrence argues: (1) the trial court erred in granting the defendants' motion for directed verdict on the issue of reputation damages because Lawrence introduced evidence from which the jury could have inferred injury to his reputation; and (2) the court erred in ordering a remittitur of the jury's emotional distress damages because the reduction was unreasonable and the court failed to give Lawrence the option of taking a new trial. The defendants assert in their cross-appeal that the trial court erred in submitting the issue of emotional distress damages to the jury because such damages are not recoverable for legal malpractice claims which arise out of economic transactions.

## II. Damages to Reputation

### A. Standard and Scope of Review

The defendants assert Lawrence has failed to preserve his challenge to the district court's grant of the defendants' motion for directed verdict for our review. The defendants contend that the law required Lawrence to file a motion for new trial following the grant of directed verdict in order to allow the trial court the opportunity to correct any error it might have made. The defendants' contention is in error. In order for a party to preserve error when challenging the grant of a motion for directed verdict, the party merely needs to challenge the motion and inform the trial court of the grounds for the challenge so that the trial court may pass on those grounds. *Cf.* 75A Am.Jur.2d *Trial* § 931, at 502–03 (1991); *Henkel v. R & S Bottling Co.,* 323 N.W.2d 185, 187 (Iowa 1982). Our review is then limited to those grounds the challenger has raised. *Cf. Spaur v. Owens–Corning Fiberglas Corp.,*

510 N.W.2d 854, 858 (Iowa 1994); *Federal Land Bank v. Woods,* 480 N.W.2d 61, 65 (Iowa 1992); *Bartels v. Cair–Dem, Inc.,* 255 Iowa 834, 845, 124 N.W.2d 514, 521 (1963); *McClaine v. Alger,* 150 Mich.App. 306, 388 N.W.2d 349, 352 (1986).

■ The law requires a party to file a motion requesting the trial court to enlarge or amend its findings in order to preserve an issue for appeal only when the court fails to resolve an issue, claim, defense, or legal theory the parties have properly submitted to it for adjudication. Iowa R.Civ.P. 179(b); *Fisher v. Keller Indus., Inc.,* 485 N.W.2d 626, 630 n. 2 (Iowa 1992); *Farmers State Bank v. United Cent. Bank,* 463 N.W.2d 69, 73 (Iowa 1990); *State Farm Mut. Auto. Ins. Co. v. Pflibsen,* 350 N.W.2d 202, 206 (Iowa 1984). In the case at hand, the defendants moved for directed verdict on the ground that Lawrence had failed to provide evidence which demonstrated he had experienced damage to his reputation. The record indicates Lawrence resisted this motion and raised the precise challenges to the motion he raises on appeal. The trial court therefore had the opportunity to consider the challenges Lawrence now requests us to consider. The record demonstrates no error preservation problem exists with regard to this issue.

■ We review a trial court's grant of a motion for directed verdict for correction of errors of law. Iowa R.App.P. 4; *cf. Spaur,* 510 N.W.2d at 858; *Beeman v. Manville Corp. Asbestos Fund,* 496 N.W.2d 247, 254 (Iowa 1993). We view the evidence in the light most favorable to the nonmoving party and afford the nonmovant every legitimate inference that we can reasonably deduce from the evidence. *Henkel,* 323 N.W.2d at 187. We must determine whether reasonable minds could differ on the issue presented, and if such is the case, the grant of directed verdict was inappropriate and a jury question exists. *Beeman,* 496 N.W.2d at 254.

### B. Comparison to Libel and Slander Per Se

■ Plaintiff posits error by the trial court in directing a defendants' verdict by reference to cases of libel or slander per se. *See, e.g., Melton v. Bow,* 241 Ga. 629, 247 S.E.2d 100, 101, *cert. denied,* 439 U.S. 985, 99 S.Ct. 576, 58 L.Ed.2d 656 (1978); *Marathon Oil Co. v. Salazar,* 682 S.W.2d 624, 630 (Tex. Ct.App.1984). Libel in Iowa is a malicious publication, expressed either in printing or in writing, or by signs and pictures, tending to injure the reputation of another person, or to expose the person to public hatred, contempt, or ridicule or to injure the person in the maintenance of the person's business. *See Kelly v. Iowa State Educ. Ass'n,* 372 N.W.2d 288, 295 (Iowa App.1985). Iowa has recognized that falsely accusing a person of a crime constitutes libel or slander per se. *Rees v. O'Malley,* 461 N.W.2d 833, 839 (Iowa 1990).

From these sources, plaintiff claims that damage to his reputation can be assumed, similar to a libel case, without proof of actual damage. Plaintiff argues that when he was tried for the crime of bankruptcy fraud, a consequence that was generated by defendants' wrongful acts in his bankruptcy case, he was in effect libelled. He asserts that enough evidence for submission to a jury was provided by the testimony of himself and his wife. That evidence consisted of statements that he was well-known by the public in past years as a University of Iowa football player. No evidence was presented by other witnesses through testimony or documents of his reputation in the community prior to his indictment.

■ Damages to one's reputation have been held to be recoverable in actions of libel, slander, malicious prosecution, and abuse of process. Ordinarily, damages must be proved with reasonable certainty. There is authority, however, that specific proof of injury to one's reputation is not required for injury caused by remarks that are defamatory per se or by malicious prosecution, since this is considered a necessary result of the wrong. *See* 22 Am.Jur.2d *Damages* § 398, at 483 (1988). We have held that a statement that is slanderous per se is actionable without proof of damage. *Vinson v. Linn–Mar Community Sch. Dist.,* 360 N.W.2d 108, 115–16 (Iowa 1984). However, recovery is limited to "those damages which were a natural and probable consequence of the original slander

or its repetition or republication." *Brown v. First Nat'l Bank,* 193 N.W.2d 547, 555 (Iowa 1972); *see also Rees,* 461 N.W.2d at 839.

### C. Recoverability of Reputation Damages in Negligence Action

 Lawrence's argument for damages to his reputation presupposes their recoverability in an action claiming remedies from acts of negligence. Even if Lawrence had provided legally sufficient evidence that his reputation had been damaged, the unstated legal issue inherently remaining is whether reputation damages are recoverable in a negligence action. Lawrence's argument that they are, pressing on from the law of libel and the law applicable to a criminal accusation, sidesteps a formidable legal hurdle. In asserting injury from an act of negligence, he makes no claim that defendants' conduct was malicious or done recklessly or wantonly, the gravamen of those actions cited for comparison.

Only a few jurisdictions in the country allow recovery of such damages under the circumstances of this case. *See Jorgensen v. Massachusetts Port Auth.,* 905 F.2d 515, 521 (1st Cir.1990) ("[C]ourts recognizing such a claim are few in number. Moreover, those courts recognizing reputation damage claims have generally failed to address the foreseeability concerns that have been articulated by the courts rejecting such claims.").

The Indiana Court of Appeals has succinctly stated the majority view on recovery of reputation damages:

> Damages for loss of reputation are only available in actions for libel, slander, abuse of process, malicious prosecution and third party contract interference. These intentional torts afford this remedy because the result is foreseeable. Foreseeability means that which it is objectively reasonable to expect, not merely what might conceivably occur.... The trial court did not err in summarily disposing of this issue as loss of reputation damages are not recoverable in a negligence action as a matter of law.

*Greives v. Greenwood,* 550 N.E.2d 334, 338 (Ind.Ct.App.1990) (citations omitted); *see also Jorgensen,* 905 F.2d at 521. The Geor-gia Court of Appeals has stated the rule as follows:

> We ... find a common thread running through the decisions in other jurisdictions: damages for injury to reputation ... are generally not recoverable in an action premised on mere negligence where no physical injury is suffered by the plaintiff, unless the elements of willfulness or wantonness have entered into the case.

*Hamilton v. Powell, Goldstein, Frazer & Murphy,* 167 Ga.App. 411, 306 S.E.2d 340, 343 (1983), *aff'd,* 252 Ga. 149, 311 S.E.2d 818 (1984); *see also Advanced Drainage Sys., Inc. v. Lowman,* 210 Ga.App. 731, 437 S.E.2d 604, 606 (1993). Strikingly similar to the case at bar, in *Hamilton,* the plaintiff brought a legal malpractice action alleging his attorneys were negligent in that they provided erroneous securities law advice. That advice resulted in the plaintiff's arrest for securities fraud and injured the plaintiff's reputation. *Hamilton,* 306 S.E.2d at 340–41; *see generally Jorgensen,* 905 F.2d at 521. The Georgia Court of Appeals held that the plaintiff could not recover reputation damages because there was no evidence in the record to demonstrate the attorneys had acted willfully or wantonly. *Hamilton,* 306 S.E.2d at 344; *see also Jorgensen,* 905 F.2d at 521.

The refusal by the courts to allow recovery of reputation damages in mere negligence actions is

> motivated by policy considerations such as the need to prevent costly, meritless litigation, the desire to avoid disproportionality between liability and fault, and the goal of only allowing liability or damages when the prospect of injury was reasonably foreseeable to the defendant.

*Jorgensen,* 905 F.2d at 521. In *Hamilton,* the Georgia Court of Appeals stated:

> [Although a disallowance of reputation damages arising from negligence actions] is seemingly harsh, still "[t]here is no right, capable of enforcement by process of law, to possess or maintain without disturbance any particular condition of feeling.... There are many moral obli-

gations too delicate and subtle to be enforced in the rude way of giving money compensation for their violation.... The civil law is a practical business system, dealing with what is tangible, and does not undertake to redress psychological injuries ... [T]here is no public policy to be subserved by giving damages for mental suffering as a general rule, and the law does not allow it."

*Hamilton,* 306 S.E.2d at 344 (quoting *Chapman v. Western Union Tel. Co.,* 88 Ga. 763, 15 S.E. 901 (1892)).

In the case at bar, Lawrence is "impermissibly trying to recover for [libel] without proving all the elements of [libel]." *Jorgensen,* 905 F.2d at 520. Lawrence has merely brought an action alleging a cause of action for negligence against his attorneys. There is a distinct difference between the level of fault associated with libel, which requires an intentional act, and a negligent act devoid of willfulness or wantonness. To sanction reputation damages in this case would be tantamount to holding that a negligent act which has resulted in reputation damages is equally as blameworthy as an intentional or wanton act designed to damage an individual's reputation. As a principle of law, such a result is unsupported by well-reasoned authority and is contrary to important policy considerations and guiding factors based on the foreseeability of such damages. We therefore hold that reputation damages are not a legal remedy available in a damage action premised on a defendant's negligent act.

## III. Emotional Distress Damages

### A. Standard and Scope of Review

■ We review a trial court's denial of a motion for judgment notwithstanding the verdict for errors in the application of the law and consider only those grounds the movant raised in the motion. *Cf. Spaur,* 510 N.W.2d at 858. We view the evidence in the light most favorable to the nonmovant and seek to determine whether sufficient evidence existed to generate a jury question. *Federal Land Bank,* 480 N.W.2d at 65; *Johnson v. Dodgen,* 451 N.W.2d 168, 171 (Iowa 1990); *In re Will of Pritchard,* 443 N.W.2d 95, 97 (Iowa App.1989). If substantial evidence exists to support a claim or

defense, a motion for judgment notwithstanding the verdict should have been denied. *Johnson,* 451 N.W.2d at 171. Evidence is substantial if a reasonable mind would accept it as adequate to reach a conclusion. *Id.*

### B. General Nature of Emotional Distress Damage Claims

Lawrence's claims for emotional distress damages are also based on his assertion that defendants were negligent in preparing his petition for bankruptcy. The federal government indicted him for bankruptcy fraud because of a statement deemed false that was made in the petition. Although he was acquitted of the charge, Lawrence says he suffered emotional distress that was caused by and was a foreseeable result of the negligent act of his bankruptcy lawyer.

■ Lawrence did not suffer any physical harm and does not claim that his lawyers' acts were intentional. Thus, the tort we have recognized as an intentional infliction of emotional distress is not claimed here. See *Meyer v. Nottger,* 241 N.W.2d 911, 917 (Iowa 1976), where we established the elements of this tort.

■ We have also recognized the tort of negligent infliction of emotional distress. *See, e.g., Barnhill v. Davis,* 300 N.W.2d 104, 108 (Iowa 1981). Regarding this tort, generally, a party may not recover damages for emotional distress in an action premised on mere negligence where the plaintiff has suffered no physical harm. *Hamilton,* 306 S.E.2d at 343; *Niblo v. Parr Mfg.,* 445 N.W.2d 351, 354 (Iowa 1989).

An exception to the denial of emotional distress damages in negligence actions unaccompanied by physical harm exists "where the nature of the relationship between the parties is such that there arises a duty to exercise ordinary care to avoid causing emotional harm." *Oswald v. LeGrand,* 453 N.W.2d 634, 639 (Iowa 1990); *Niblo,* 445 N.W.2d at 354. We have recognized recovery for emotional distress damages in actions which did not involve an intentional tort when a party negligently performed an act which was

so coupled with matters of mental concern or solicitude, or with the sensibilities of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering, and it should be known to the parties from the nature of the [obligation] that such suffering will result from its breach. *Meyer,* 241 N.W.2d at 921 (quoting *Lamm v. Shingleton,* 231 N.C. 10, 55 S.E.2d 810, 813 (1949)). We have therefore recognized the propriety of recovery of emotional distress damages in actions involving: (1) medical malpractice resulting from the negligent examination and treatment of a pregnant woman and her premature fetus associated with the death of the fetus, *Oswald,* 453 N.W.2d at 639; (2) distress experienced by a son when he observed the negligence of another cause injury to his mother, *Barnhill,* 300 N.W.2d at 105–08; (3) the negligent delivery of a telegram announcing the death of a loved one, *Cowan v. Western Union Telegraph Co.,* 122 Iowa 379, 386–87, 98 N.W. 281, 282–84 (1904); *Mentzer v. Western Union Telegraph Co.,* 93 Iowa 752, 768–69, 62 N.W. 1, 6 (1895); and (4) the negligent performance of a contract to perform funeral services, *Meyer,* 241 N.W.2d at 920.

In assessing the level of stress necessary to support a claim we have adopted the following test from the Restatement (Second) of Torts: "whether the distress inflicted is so severe that no reasonable man could be expected to endure it." *Bethards v. Shivvers, Inc.,* 355 N.W.2d 39, 44–45 (Iowa 1984). In several cases we have held that a plaintiff is not entitled to damages for severe emotional distress because the actions did not rise to the level required by our law following the Restatement. *See, e.g., Tappe v. Iowa Methodist Medical Ctr.,* 477 N.W.2d 396, 403–04 (Iowa 1991) (court held that proof "[fell] far short" of proof necessary for severe distress where plaintiff felt upset and confused by confrontation with cardiologist, which was the "worst thing" that ever happened to him. Plaintiff alleged the cardiologist stated that the patient (plaintiff's wife) would never regain consciousness or live independently, that plaintiff would be "broke" after trying to keep her alive for three months, and that she would die anyway.); *Vaughn v. Ag Process-*

*ing, Inc.,* 459 N.W.2d 627, 636 (Iowa 1990) (plaintiff's complaint that he had been "upset," "grouchy," and "nervous" and that his sex life had deteriorated after supervisor made derogatory religious comments was insufficient to prove severe emotional distress); *Bethards,* 355 N.W.2d at 44–45 (no substantial evidence of severe emotional distress existed where plaintiffs "were angry and lost sleep, 'quivered' when the subject came up, and ... worried whether people thought [plaintiffs] owned a 'junk farm.' "); *Harsha v. State Sav. Bank,* 346 N.W.2d 791, 801 (Iowa 1984) (evidence of being "downhearted" and "depressed" was too insubstantial to demonstrate severe distress); *Poulsen v. Russell,* 300 N.W.2d 289, 297 (Iowa 1981) (evidence that plaintiff was feeling as if he "had lost everything" falls short of required showing of severe emotional distress).

C. Availability of Emotional Distress Damages in a Negligence Action

■ As with his claim to reputation damages, Lawrence has presented his case based on the assumption that emotional distress damages, as a legal concept, are recoverable in negligence actions. We stated earlier in this opinion that under Iowa law the general rule is that in cases grounded in negligence, emotional distress damages are not recoverable unless accompanied by physical injury. An exception exists "where the nature of the relationship between the parties is such that there arises a duty to exercise ordinary care to avoid causing emotional harm." *Oswald,* 453 N.W.2d at 639. Since no physical injury is alleged in the case at bar, a threshold issue is whether a bankruptcy attorney, in performing his or her duties, holds a duty to protect the client from emotional distress.

Iowa courts have only recognized a duty to protect against emotional anguish in circumstances involving a contractual relationship for "contractual services that carry with them deeply emotional responses in the event of breach." *Id.* A review of the circumstances of these Iowa cases demonstrates that we have only allowed recovery of emotional distress damages in situations which involve both a close nexus to the action at issue and extremely emotional circumstances.

See the discussion of exceptions recognized by our decisions in Division IIIB.

In addition to being an important factor for consideration in the determination of the existence of a duty, foreseeability is an important element in the establishment of causation. *Barnhill*, 300 N.W.2d at 106. Damages for emotional distress which arise out of acts which invade an interest protected by tort law are recoverable only if the claimed emotional distress "naturally ensues from the acts complained of." *Merenda v. Superior Court*, 3 Cal.App.4th 1, 4 Cal. Rptr.2d 87, 89 (1992). We assign liability only for injuries "an ordinary person should reasonably foresee as the consequences of the negligent act." *Barnhill*, 300 N.W.2d at 106.

The majority view among American jurisdictions is that emotional distress is not a reasonably foreseeable consequence of and does not "naturally ensue" from an act of legal malpractice. *Merenda*, 4 Cal.Rptr.2d at 89, 91 ("precedent runs strongly against recovery [of emotional distress damages] in cases of legal malpractice."); *see also Smith v. Superior Court*, 10 Cal.App.4th 1033, 13 Cal.Rptr.2d 133, 136 (1992); *McClain v. Faraone*, 369 A.2d 1090, 1092, 1094 (Del.Super.Ct.1977) (emotional distress resulting from loss of residential property was not natural and probable consequence of negligent title search); *Maere v. Churchill*, 116 Ill.App.3d 939, 72 Ill.Dec. 441, 444, 452 N.E.2d 694, 697 (1983) ("Even though real estate is unique and the attorney-client relationship is a fiduciary one, we are unable to conclude that serious emotional disturbance is a particularly likely result of an attorney's breach of contract in his examination of title to real estate."). Only in "special cases involving peculiarly personal subject matters" do the majority of jurisdictions recognize that mental anguish may be a foreseeable damage resulting from attorney negligence. *See, e.g., Oswald*, 453 N.W.2d at 639; *Selsnick v. Horton*, 96 Nev. 944, 620 P.2d 1256, 1257 (1980).

Lawrence's recognition of these rules and precedents inhibiting his ability to recover emotional distress damages in a negligence action leads him again to fashion his claim after the law of defamation. However, a factual disparity appears in trying to relate his case to a defamation case in that Lawrence's emotional distress claim is one step removed from the negligent act in preparing the bankruptcy petition. Were it not for the indictment by the federal government for fraud, there would have been no basis for Lawrence's claim. Although not correlative, the policy considerations we expressed in *Millington v. Kuba*, 532 N.W.2d 787 (Iowa 1995), are instructive here. In *Millington*, we affirmed the district court's granting of summary judgment to the defendants because the plaintiffs had failed to satisfy the physical injury requirement of the negligent infliction of emotional distress claim. There, the emotional distress arose out of the alleged wrongful cremation of the body of the plaintiffs' father. We also decided in *Millington* that a new exception to that requirement was not warranted. We declined to recognize a duty, as urged by plaintiffs, simply on the basis of the existence of a highly emotional relationship. Thus, the plaintiffs were too far removed from the defendants' alleged negligent conduct to cause the imposition of a duty on the defendants to exercise ordinary care to avoid causing emotional harm to the plaintiffs.

Our court of appeals in *Kunau v. Pillers, Pillers & Pillers, P.C.*, 404 N.W.2d 573 (Iowa App.1987), also refused an attempt to expand the application of the tort of negligent infliction of emotional distress. There, a lawyer's negligent procedure in handling a case caused its dismissal which prevented a trial on the merits. The court of appeals refused to recognize that the plaintiff was entitled to damages for negligent infliction of emotional distress ensuing from the lawyer's negligence.

The Georgia court held in *Hamilton* regarding reputation damages that the defendant law firm was not liable when its legal advice regarding a company's commercial note program led to the board chairman's indictment for fraud and misrepresentation under the Georgia Securities Act. *See Hamilton*, 306 S.E.2d at 340–44. The court also held that in the absence of physical injury, wanton, voluntary, or intentional misconduct,

damages for mental and physical strain or decreased earning capacity as well as reputation damages are not recoverable.

Based on our precedents in this area of law and the reasoning of other courts on the subject, we believe that recognition of emotional distress damages as a result of the negligence of a bankruptcy attorney in completing bankruptcy forms would constitute a clear departure from the narrow circumstances in which emotional distress damages have previously been recoverable.

A bankruptcy attorney's duty to competently manage the bankruptcy process is not " 'so coupled with matters of mental concern or solicitude, or with the feelings of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering.' " *Oswald*, 453 N.W.2d at 639 (quoting *Taylor v. Baptist Medical Ctr.*, 400 So.2d 369, 374 (Ala. 1981)). Moreover, the claimed emotional distress is too far removed from the defendants' negligent conduct to cause the imposition of a duty and does not naturally ensue from the acts complained of. We therefore hold that the trial court erred as a matter of law in submitting the claim of severe emotional distress to the jury. Defendants' motion for judgment notwithstanding the verdict on this issue should have been sustained.

## IV. Disposition

The trial court's denial of the defendants' motion for judgment notwithstanding the verdict is reversed and the trial court's grant of the defendants' motion for directed verdict on the issue of reputation damages is affirmed. Lawrence's recovery of attorney fees associated with his bankruptcy fraud action are not at issue in this appeal and they remain as awarded by the trial court.

Affirmed on plaintiff's appeal and reversed on defendants' cross-appeal.

**AFFIRMED IN PART AND RE-VERSED IN PART.**

All Justices concur except CARTER, J. joined by LAVORATO, J., who dissent.

TERNUS, J., takes no part.

CARTER, Justice (dissenting).

I dissent. The present controversy is uncommon because it involves the action of an intervening agency, *i.e.*, federal criminal authorities, which operated independently upon the defendants' negligence, so as to work harm upon the plaintiff, Lawrence. Whatever significance this circumstance may have concerning whether defendants should be made liable for the harm that their negligence created, it does not provide a basis, once liability is assumed, for an unprincipled disallowance of certain elements of damage that the evidence reveals were sustained. In deciding the damage issues in the present case, the liability and causation issues must be considered most favorably toward Lawrence. I find it helpful to consider the majority's position on recovery for emotional distress damages and recovery for loss of reputation in inverse order.

### I. *The Right to Recover Damages for Emotional Distress.*

The majority elects to disallow any recovery by Lawrence for emotional distress because he did not sustain physical injury. This standard has been frequently resorted to by courts and is justified in the Restatement (Second) of Torts on the following grounds:

The reasons for the distinction, as they usually have been stated by the courts, have been three. One is that emotional disturbance which is not so severe and serious as to have physical consequences is normally in the realm of the trivial, and so falls within the maxim that the law does not concern itself with trifles. It is likely to be so temporary, so evanescent, and so relatively harmless and unimportant, that the task of compensating for it would unduly burden the courts and the defendants. The second is that in the absence of the guarantee of genuineness provided by resulting bodily harm, such emotional disturbance may be too easily feigned, depending, as it must, very largely on the subjective testimony of the plaintiff; and that to allow recovery for it might open too wide a door for false claimants who have suffered no real harm at all. The third is that

where the defendant has been merely negligent, without any element of intent to do harm, his fault is not so great that he should be required to make good a purely mental disturbance.

Restatement (Second) of Torts § 436A cmt. b (1965).

As suggested some time ago, however, by a leading authority in the field of tort law, courts ought not let this rule prevent them from reaching sensible and just results in situations in which the reasons for the general rule do not exist. Prosser on Torts § 328 (4th ed. 1971). As Dean Prosser observes:

[T]he difficulty [of proof] is not insuperable. Not only fright and shock, but other kinds of mental injury are marked by definite physical symptoms, which are capable of clear medical proof. It is entirely possible to allow recovery only upon satisfactory evidence and deny it when there is nothing to corroborate the claim, or to look for some guarantee of genuineness in the circumstances of the case. The problem is one of proof, and it will not be necessary to deny a remedy in all cases because some claims may be false.

*Id.*

Consistent with Dean Prosser's suggestion, this court has recognized the need to temper the general rule of nonliability in proper cases. Because errors in the transmission of telegrams on the subject of death and dying are very likely to cause emotional distress, but very unlikely to cause physical injury, recovery of damages for emotional distress has been allowed in such cases without proof of physical injury. *Mentzer v. Western Union Tel. Co.,* 93 Iowa 752, 768–71, 62 N.W. 1, 5–6 (1895). In another situation, we have refused to apply the general rule limiting emotional distress damages when health care providers under an obligation to provide for their patients' physical care act in a manner that would inevitably result in mental anguish. *Oswald v. LeGrand,* 453 N.W.2d 634, 639 (Iowa 1990). I submit that the facts of the present action are equally deserving of a departure from the general limitation on damages for emotional distress.

Lawyers are hired for the very purpose of assisting their clients in avoiding the harsh consequences, including emotional consequences, that frequently attend a failure to observe legal requirements. In the present case, the jury could have found that the defendant's negligent actions in filling out bankruptcy schedules made it appear that the client had committed a serious federal crime. This in turn led to indictment, arrest and trial with the possibility of conviction and imprisonment—circumstances that by their very nature placed the client in a very stressful situation that continued over a lengthy period of time. The severe emotional impact that this would place on any normal person is neither trivial nor speculative. It would not, however, ordinarily produce a physical injury so as to be compensable under the general rule.

The present case meets both the "special relation of the actor" test applied in *Oswald* and the "unlikely occurrence of physical injury in connection with foreseeable emotional distress" test invoked in the *Mentzer* telegram case. The reasons for the general rule of nonliability advanced in section 436A of the Restatement do not fit the present controversy. The anxiety that would normally accompany the travail of being indicted, arrested, and tried for a serious federal crime is not in the realm of the trivial. A person subjected to those occurrences will not be subject to feigning emotional distress. These circumstances create a strong likelihood that such distress will occur and will exist throughout the entire period of the criminal proceeding. I submit that the defendants in the present case bore a relationship to Lawrence that should subject them to liability for foreseeable harms arising from events that it was their responsibility to prevent, albeit that those consequences were unintended. I would affirm the judgment of the district court allowing the emotional damages awarded in the verdict of the jury.

II. *Recovery of Damages for Injury to Reputation.*

The majority sustains a directed verdict in favor of defendants on Lawrence's claim for damage to reputation on the theory that such damages are never recoverable in negligence actions. Lawrence sought recovery for loss

of reputation as a separate item of damages distinct from other emotional distress. It is evident, however, from reading the authorities relied on by the majority that its decision denying those damages is based on the same reasoning it has utilized in denying damages for other emotional disturbance. In the absence of economic loss due to a damaged reputation, the injury thus sustained is emotional in nature based on embarrassment and loss of dignity. But, as was true with the other elements of emotional distress, such as anxiety and stress, the circumstantial evidence strongly corroborates Lawrence's claim that he experienced emotional injury from damage to his reputation. I believe that these circumstances create a prima facie case for recovery of damages based on the resulting embarrassment and loss of dignity. I would reverse the judgment of the district court granting a directed verdict on that portion of Lawrence's claim.

LAVORATO, J., joins in this dissent.