**IN THE COURT OF APPEALS OF IOWA**

No. 18-0004
Filed July 3, 2019

**HEIDI McFARLAND and RACHEL McFARLAND,**
       Plaintiffs-Appellees/Cross-Appellants,

**vs.**

**JASON RIEPER,**
       Defendant-Appellant/Cross-Appellee.
_____

       Appeal from the Iowa District Court for Polk County, Jeanie K. Vaudt, Judge.


       The defendant appeals and the plaintiffs cross-appeal from the jury verdict in favor of the plaintiffs on their legal-malpractice claim. **REVERSED AND REMANDED.**


       David L. Brown and Alexander E. Wonio of Hansen, McClintock & Riley, Des Moines, for appellant.

       Roxanne Barton Conlin of Roxanne Conlin & Associates, P.C., Des Moines, for appellees.


       Heard by Mullins, P.J., Bower, J., and Vogel, S.J.*

       *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**VOGEL, Senior Judge.**

Jason Rieper appeals and Heidi and Rachel McFarland cross-appeal from the jury verdict in favor of the McFarlands on their legal-malpractice claim. Rieper represented the McFarlands in an unsuccessful adoption. Rieper asserts emotional distress damages are not available here, the McFarlands did not establish a prima facie case for legal malpractice, and a new trial or a reduction or remittitur of the jury award is warranted due to prejudicial statements and violations of the court's rulings. On cross-appeal, the McFarlands assert, in the event of a new trial, evidence of the baby's death should be admitted and we should clarify the standards for evaluating juror bias. We find the McFarlands have not shown Rieper engaged in illegitimate conduct, as required to recover emotional distress damages in a legal-malpractice claim. We therefore reverse and remand for entry of judgment in favor of Rieper. Because this issue is dispositive, we do not reach the parties' other issues.

## I.      Background Facts and Proceedings

In the fall of 2013, Felicia West, Rachel's coworker, informed Rachel that her sixteen-year-old daughter, M.A., was pregnant. West asked if Rachel and her wife Heidi wanted to adopt M.A.'s baby. Rachel and Heidi soon met with West and M.A., and the four verbally agreed the McFarlands would adopt the baby. The McFarlands remained in contact with West and M.A. throughout the remainder of M.A.'s pregnancy, providing food and taking M.A. to medical appointments. M.A. eventually identified Andrew Weehler-Smith, who was also a minor, as the likely father of the baby.

On October 7, the McFarlands entered into a contract with attorney Rieper for him to represent them in the private adoption. On December 28, M.A. gave birth to the baby in Des Moines. M.A. recovered in her room while the McFarlands stayed with the baby in a separate hospital room. On December 30, M.A. and West signed an authorization to discharge the baby to Rieper. Rieper then left the hospital with the baby and placed him in the McFarlands' care.

On January 20, 2014, Rieper sent an email to attorney Penny Reimer asking her to serve as guardian ad litem (GAL) for M.A. In his email, Rieper noted M.A. "is cooperating, but I can't have her sign a Release of Custody until she has counsel."[1] Reimer agreed to the request. On January 22, Rieper filed a petition to terminate parental rights, which also sought to appoint Reimer as GAL for M.A. and two other attorneys as separate GALs for Weehler-Smith and the baby. The court scheduled a hearing on the petition for March 24. On February 25, M.A., having yet to sign a release of custody for the baby, notified Reimer that she wanted to back out of the adoption. On March 13, the McFarlands returned the baby to M.A. through Rieper.[2] On March 14, Rieper moved to dismiss the petition without prejudice.

---

[1] A valid, unrevoked release of custody is one of several required grounds for a court to terminate parental rights to the child. Iowa Code § 600A.8(1) (2014). The Iowa Code places several conditions on a release of custody, including that it be signed no earlier than seventy-two hours after the child's birth. *Id.* § 600A.4(2). Prior to the entry of an order terminating parental rights, the court must order revocation of the release if the signing parent requests revocation within ninety-six hours of signing the release, or the court may otherwise order revocation of the release upon a showing of "good cause." *Id.* § 600A.4(4). When commencing an adoption action, termination of parental rights is generally required before filing an adoption petition. *Id.* § 600.3(2).

[2] According to the McFarlands' petition, the baby died in M.A.'s home on April 22, 2014, resulting in Weehler-Smith being charged with neglect and murder. Weehler-Smith ultimately pled guilty to murder in the second degree. *State v. Weehler-Smith*, No. 16-0871, 2017 WL 2181493, at *1–2 (Iowa Ct. App. May 17, 2017).

On August 7, the McFarlands filed their petition claiming Rieper committed legal malpractice arising from his negligent conduct by failing "to draft, execute and communicate to [the McFarlands] that he had failed to obtain the signed release of custody from [M.A.] prior to placing the child with" them. Trial was held July 31 through August 15, 2017. The jury found Rieper was negligent in representing the McFarlands, and it awarded $1,500,000 in past emotional distress and $1,750,000 in future emotional distress—a total damage award of $3,250,000 in emotional distress to the McFarlands. Rieper filed a motion requesting judgment notwithstanding the verdict, new trial, and reduction or remittitur of the jury award, which the court fully denied. Rieper now appeals, and the McFarlands cross-appeal.

## II.     Standard of Review

We review the denial of a motion for judgment notwithstanding the verdict for correction of errors at law. *Channon v. United Parcel Serv., Inc.*, 629 N.W.2d 835, 859 (Iowa 2001). In considering a ruling on a motion for judgment notwithstanding the verdict, we consider "whether substantial evidence exists to support the plaintiff's claim, justifying submission of the case to the jury. In making this determination, we view the evidence in the light most favorable to the nonmoving party." *Id.*

## III.     Emotional Distress Damages

The McFarlands sought and received damages only resulting from emotional distress. Rieper asserts emotional distress damages are not available in this action for legal malpractice.

"Legal malpractice claims sound in negligence." *Vossoughi v. Polaschek*, 859 N.W.2d 643, 649 (Iowa 2015). As a general rule for "cases grounded in negligence, emotional distress damages are not recoverable unless accompanied by physical injury. An exception exists 'where the nature of the relationship between the parties is such that there arises a duty to exercise ordinary care to avoid causing emotional harm.'" *Lawrence v. Grinde*, 534 N.W.2d 414, 421 (Iowa 1995) (quoting *Oswald v. LeGrand*, 453 N.W.2d 634, 639 (Iowa 1990)).

The Iowa Supreme Court has recognized emotional distress damages may be available for a claim of legal malpractice. *Miranda v. Said*, 836 N.W.2d 8, 14–33 (Iowa 2013). In doing so, the court affirmed the standard for emotional distress damages under *Lawrence*. *Id.* at 33. However, the court emphasized, "[I]t is not just the nature of the relationship that supports emotional distress damages, but the high likelihood of such damages from negligent acts engaged in by the lawyer. The duty arises when those acts are illegitimate and, if pursued, are especially likely to produce serious emotional harm." *Id.*

In *Miranda*, the defendant immigration attorney knowingly advised his clients to pursue an illegal course of conduct, that they should voluntarily leave the United States before applying for citizenship. *Id.* at 11. Despite the attorney's assurances the "plan contained no risks," their citizenship applications were denied, and they were barred from reentry to the United States for ten years while their children remained in the country. *Id.* at 11–12. The court noted that generally "emotional distress would accompany the prolonged separation of a parent and child," but the plaintiffs' emotional distress claim cannot be "predicated on the existence of a highly emotional relationship alone." *Id.* at 29, 32. The court found

emotional distress damages were appropriate because, in addition to the plaintiffs' emotional relationship, the defendant attorney "only pursued an illegitimate course of conduct that had no chance of success if the independent decision-maker followed the law." *Id.* at 33. In reaching this conclusion, the court cited to a federal legal-malpractice case where an immigration attorney advised his client to lie to immigration officials in order to attempt an illegitimate entry to the United States. *Id.* at 30–32 (citing *dePape v. Trinity Health Sys., Inc.* 242 F. Supp. 2d 585, 615–17 (N.D. Iowa 2003)). Our court noted *dePape* "recognized that although an unsuccessful, but legitimate, attempt at entry might understandably cause emotional distress to the client, the attorney would not be liable for the failed legitimate attempt." *Id.* at 32 (citing *dePape*, 242 F. Supp. 2d at 616).

In their brief to us and at oral arguments, the McFarlands noted other jurisdictions have allowed emotional distress damages for legal malpractice in the field of family law without necessarily requiring "illegitimate" conduct that was "especially likely to produce serious emotional harm." *See id.* at 33. In particular, they pointed to a New Jersey case where an ex-husband recovered emotional distress damages after a law firm released his child's passport to his ex-wife in violation of an agreement between the ex-spouses, which allowed the ex-wife to remove the child from the country. *See Innes v. Marzano-Lesnevich*, 87 A.3d 775, 779 (N.J. Super. Ct. App. Div. 2014). *Innes* cites to *Miranda* with approval in noting courts are trending toward allowing emotional distress damages in legal-malpractice claims. *See id.* at 794 (citing *Miranda*, 836 N.W.2d at 11–13, 32–33). In recognizing this development, *Innes* requires legal-malpractice plaintiffs to show "egregious" and "extraordinary" conduct to recover for emotional distress. *See id.*

at 796 ("Despite knowing of the Agreement, including that it had been signed by the parties and the attorneys, the already contentious nature of the parties' separation and [the ex-husband's] reliance on the safekeeping of [the child's] passport, defendants breached their duty and simply gave the passport to [the ex-wife]. . . . Defendants' conduct was sufficiently 'egregious' and 'extraordinary' to permit an award of emotional distress damages in this case."). Therefore, while *Innes* is not binding upon us, we view it as generally consistent with *Miranda* in that it requires more than ordinary negligence and an emotional personal relationship to permit recovery for emotional distress in legal malpractice. *See id.* ("We hasten to add that most factual situations will not support [emotional distress damages], even when the underlying interests are non-pecuniary and personal in nature."); *see also Miranda*, 836 N.W.2d at 41 (Waterman, J., dissenting) ("We should continue to disallow emotional distress awards in a legal malpractice action in which the attorney is merely found negligent.").

Accordingly, emotional distress damages are only available here if the McFarlands show Rieper had "a duty to exercise ordinary care to avoid causing emotional harm." *Lawrence*, 534 N.W.2d at 420 (quoting *Oswald*, 453 N.W.2d at 639). To do so, the McFarlands must prove Rieper's negligent acts were "illegitimate" and "especially likely to produce serious emotional harm." *Miranda*, 836 N.W.2d at 33. While a highly emotional relationship may have existed, this relationship alone cannot support emotional distress damages. *See id.* at 29.

The McFarlands primarily argue Rieper was negligent in failing to timely obtain releases of custody from M.A. and Weehler-Smith after the baby's birth. In support, the McFarlands' expert testified that Rieper failed "to meet the standard

of care by timely getting a release of custody." While the jury concluded Rieper was negligent in representing the McFarlands, the record contains no indication he advised the McFarlands to pursue an illegitimate strategy or otherwise acted contrary to Iowa law in pursuing releases of custody. Instead, he continued working on the termination after the birth, locating GALs for the minor birth parents in order to properly terminate their parental rights. *See* Iowa R. Civ. P. 1.211 ("No judgment without a defense shall be entered against a party then a minor . . . . Such defense shall be by guardian ad litem . . . ."). While he may have unnecessarily delayed finding GALs and ensuring they obtained signed releases of custody, these actions were not illegitimate. *See Miranda*, 836 N.W.2d at 33.

The McFarlands also assert Rieper acted illegitimately by improperly filing the petition to terminate parental rights without having first obtained releases of custody. *See* Iowa Code § 600A.5(1) (allowing a petition for termination of parental rights to be filed by a "parent," "prospective parent," "custodian," or "guardian"). Assuming this petition was deficient when Rieper filed it, his actions in filing the petition cannot support emotional distress damages. Nothing in the record indicates any deficiencies in the petition caused the McFarlands' loss. Rather, as the McFarlands' expert testified, any loss resulted from the unsuccessful attempts to obtain releases of custody. Upon learning M.A. would not sign a release, Rieper moved to dismiss the petition to terminate parental rights without prejudice. Had the birth parents been willing to sign releases at this point, Rieper could have instead cured any deficiencies by amending the petition, or he could have simply filed a new proper petition. Therefore, Rieper's handling of the petition for

termination of parental rights did not cause emotional distress, and his conduct related to the petition cannot support emotional distress damages.

Taking the evidence in the light most favorable to the McFarlands, they have not shown Rieper engaged in illegitimate conduct that was especially likely to produce serious emotional harm. *See Miranda*, 836 N.W.2d at 33. Accordingly, they cannot show he had "a duty to exercise ordinary care to avoid causing emotional harm," and emotional distress damages are not available. *See Lawrence*, 534 N.W.2d at 421.

## IV. Conclusion

Because emotional distress damages are not available in the McFarlands' legal-malpractice claim, the district court erred in denying Rieper's motion for judgment notwithstanding the verdict. Therefore, we reverse and remand for entry of judgment in favor of Rieper. We do not reach the parties' other claims.

**REVERSED AND REMANDED.**